477 So.2d 1335 (1985)
James Michael STRINGER a/k/a Jimmy Michael Stringer
v.
STATE of Mississippi.
No. 54876.
Supreme Court of Mississippi.
August 7, 1985.
*1336 Samuel H. Wilkins, James O. Nelson, II, Wilkins, Ellington & James, Jackson, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
James Michael Stringer was found guilty in the Circuit Court of the First Judicial District, Hinds County, Mississippi, on a charge of aggravated assault and was sentenced to twenty (20) years with the Mississippi Department of Corrections. He has appealed to this Court and assigns two errors in the trial below.
The evidence reflects that, on October 31, 1981, Larry Westbrook, the victim, and Bill *1337 Moak were drinking beer in Harley D's lounge, Jackson, Mississippi; that they caused a disturbance in the lounge and appellant became involved in it; that Westbrook and Moak were asked to leave the lounge and they went to the parking lot where Westbrook's Corvette automobile was parked approximately twenty (20) feet from appellant's Camaro automobile.
Jerry Benson, a witness for the appellant, testified he was standing in the front doorway of the lounge and that he heard air escaping from an automobile tire; that he saw Westbrook and Moak headed to Westbrook's car from appellant's vehicle; and that he called appellant and told him "I think they just cut your tire." Appellant emerged from the lounge, observed that the left back tire on his automobile had been cut, and was flat, and he went to the Westbrook car where he inquired why Westbrook had cut his tire. Westbrook got out of the car, grabbed appellant in a bear hug and they began to struggle. Benson caught Westbrook by the shoulder and struck him five times in the back, attempting to separate the men. Appellant pulled a handgun and struck Westbrook on the head several times with it. Westbrook turned toward Benson and appellant shot him in the back, the bullet ranging downward through the pelvic bone. Westbrook was helped to his automobile and Moak drove him to a doctor as quickly as possible.
Dr. Ken Stone first saw Westbrook about 11:30 p.m. on October 31, 1981, in the emergency room of Hinds General Hospital. He observed a large wound in the lower back and X-rays revealed that the pelvis was fractured and bullet fragments were in the pelvic bone. An exploratory laparotomy, which opened the abdominal cavity, was performed to determine whether or not there was internal damage. The procedure was considered to be a major operation.
Westbrook was hospitalized for seven days and in addition to the back injury, fifty stitches were taken in his head. He was under the care of a physician for approximately three months.

I.

THE LOWER COURT ERRED IN PERMITTING THE STATE TO ELICIT HIGHLY PREJUDICIAL STATEMENTS IN FRONT OF THE JURY REGARDING APPELLANT'S BAD CHARACTER, PRIOR BAD ACTS AND PREVIOUS TRIALS.
The appellant contends (1) that the State erred in inquiring of the appellant's witness, Jerry Miley, whether or not he had been a character witness for appellant.
Miley was called to the stand by appellant, and at the conclusion of his direct examination, he was asked whether or not he had been subpoenaed as a witness by the State. Miley answered in the affirmative. On cross-examination, District Attorney Peters asked the following questions:
CROSS EXAMINATION BY MR. PETERS:
Q. Mr. Miley, after you were subpoenaed by the State, did we find out that you had been a character witness for this Defendant before?
A. If you did, it was unbeknowing to me.
Q. Have you been a character witness for this Defendant before?
A. Certainly have.
BY MR. WILKINS: Your Honor, I object to that. It's improper and I move for a mistrial.
BY THE COURT: Overruled. Move along.
The appellant argues that the district attorney's question as to whether or not Miley had been a character witness for appellant and his response in the affirmative informed the jury that Stringer had been tried for other crimes, and constituted reversible error. We do not agree. The obvious purpose of the district attorney's questions was to show that Miley was interested in appellant's defense and that he was biased in favor of the appellant. The interest, bias or prejudice of a witness may *1338 be shown for the purpose of affecting his credibility. Tate v. State, 317 So.2d 23 (Miss. 1975). We are of the opinion that the question and answer did not amount to evidence of previous crimes and did not constitute reversible error.
Appellant contends (2) that the State erred in eliciting from witness Miley information of other crimes regarding the carrying of a concealed weapon.
The district attorney cross-examined Miley as follows:
Q. How much bigger is Larry Moak than this Defendant  I mean, Larry  Larry Westbrook than this Defendant?
A. They're somewhat of the same size.
Q. Same size. What is it that would be a good equalizer between them?
A. A .357 Magnum.
Q. Is that what Jimbo Stringer shot that man with?
A. I presume so.
Q. Why do you presume that?
BY MR. WILKINS: Your Honor, I object to what he presumes. Ask it be stricken 
BY MR. PETERS: He volunteered 
BY THE COURT: Well, I think that's his question, Mr. Wilkins. Move along.
BY MR. WILKINS: I didn't hear your ruling, Your Honor.
BY THE COURT: Overruled.
Q. Where did you get that information?
A. Because I know quite frequently he carried a.357.
Q. Who?
A. Jimmy Stringer.
Q. Jimmy Stringer?
A. That's right.
Q. The Defendant?
A. Mr. Stringer.
Q. Mr. Stringer. How often have you seen him with it?
A. Maybe a hundred times.
Q. Over what period of time?
A. Couple of years maybe.
Q. Couple of years. And how old is that person?
A. I believe he's twenty years old.
Q. Twenty years old and since he was eighteen, he's been carrying a .357 Magnum that you've seen a hundred times?
A. Probably.
BY MR. PETERS: Nothing further.
The objection was to the answer that "I presume so." Subsequent to that objection, the district attorney was told by Miley that appellant had frequently carried a .357 Magnum pistol; that he had seen him with it probably a hundred times over a couple of years; and that he had been carrying it since he was eighteen years of age. No objection was made to that testimony, and we are of the opinion that there is no merit in this contention. Mississippi State Highway Commission v. Robertson, 350 So.2d 1348 (Miss. 1977).
Appellant argues (3) the State introduced evidence that appellant was in jail at a time when he was in jail on another offense and (4) the State made a concerted effort to bring out and draw attention to appellant's nickname "Jimbo" in order to acquaint the jury with bad publicity surrounding appellant and his father, both of whom had been involved in a capital murder charge. We have carefully examined the record and find that the reference to appellant's being in jail did not specify any particular offense and we are of the opinion that the examination by the district attorney did not prejudice the jury. Further, the court sustained the objection of appellant's attorney and instructed the jury to disregard the questions and answers. It is presumed the jury followed these directions. Holifield v. State, 275 So.2d 851 (Miss. 1973) and progeny.
Prior to the commencement of the trial, counsel for appellant orally moved the court to direct that any reference to the appellant be either under the name "Mr. Stringer" or "Jimmy Stringer" in an effort to avoid publicity accorded to appellant as *1339 "Jimbo Stringer."[1] The court instructed the State to do the best it could in avoiding the designation "Jimbo Stringer" throughout the trial.
Many of the witnesses knew appellant and referred to him as "Jimbo Stringer," although during the trial "Jimbo" was used sparingly. The prosecution referred to appellant by name a total of twenty-eight (28) times and in only four (4) of those instances was the nickname "Jimbo" used.[2]
We are of the opinion that there is no merit in this contention.

II.

THE APPELLANT'S CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AGAINST HIM WAS VIOLATED BY THE ADMISSION OF HIGHLY PREJUDICIAL HEARSAY EVIDENCE.
Larry Westbrook, the victim and prosecuting witness, testified on cross-examination and redirect examination:
CROSS EXAMINATION BY MR. WILKINS:
Q. And you called the District Attorney's office and told them you wanted to drop the case.
A. Right.
Q. Do you remember when that would have been?
A. No, I don't.
Q. Do you know who you talked to?
A. No, I don't.
Q. Did you want to testify here today?
A. No.
Q. Who compelled you to testify?
A. Well, the District Attorney.
BY MR. WILKINS: That's all we have, Your Honor.
REDIRECT EXAMINATION BY MR. PETERS:
Q. Larry, you didn't want to testify. Where does you mother live?
A. On Grandview Circle.
Q. How close does she live to the Stringer's?
A. Pretty close to the old neighborhood.
Q. Did you tell me you were afraid for your mother?
A. Yes 
BY MR. WILKINS: Your Honor, that is not proper.
BY THE COURT: Overruled.
Q. What about you? Are you afraid for yourself?
A. Yes.
Q. Did you tell me that that's why you didn't want to testify?
A. Right.
Q. Has anyone come looking for your address with a pistol?
BY MR. WILKINS: Your Honor, I object. That's not proper and I move for a mistrial.
BY THE COURT: Overruled.
Q. Is that right, Larry?
A. I had heard that.
BY MR. WILKINS: Your Honor 
Q. Is that why you told me you didn't want to testify?
BY MR. WILKINS: Your Honor 
BY THE COURT: I'm not admitting it for the truthfulness of  of the question or the answer, Mr. Wilkins, but I believe you opened this up.
BY MR. WILKINS: Your Honor, the question called for a hearsay response.
BY THE COURT: And I'm not admitting it for the truthfulness of the statement.
Q. Is that why you told me you didn't want to testify?
A. Yes.
The appellant complains that the examination by the State constituted prejudicial hearsay testimony. That examination was in response to the showing by *1340 appellant that Westbrook did not wish to testify and was an explanation of Westbrook's answers.[3] Westbrook did not testify as to who came looking for him with a gun and did not say that appellant was the person who threatened him. See McGowan v. State, 375 So.2d 987 (Miss. 1979) and Ratcliff v. State, 308 So.2d 225 (Miss. 1975). The lower court admitted the testimony not to show the truth of the matter testified about, but to show the state of mind of the witness and what he believed. That belief was the reason why he did not wish to testify. We are of the opinion that the testimony did not violate the Sixth Amendment right of appellant to confrontation and that it was not a showing by the State of the appellant's bad character.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] He had already been convicted of capital murder and had been given extensive publicity under the name of Jimbo Stringer.
[2] Appellee's Brief, p. 12.
[3] Westbrook had also filed a civil action against appellant, which had been settled for $16,500.00.