530 So.2d 155 (1988)
Albert Lynn (Lyn) SMITH
v.
STATE of Mississippi.
No. 57532.
Supreme Court of Mississippi.
August 3, 1988.
Rehearing Denied August 31, 1988.
*156 H.R. Garner, Garner & Garner, Gerald W. Chatham, Hernando, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Pat Flynn, Sp. Asst. Atty. Gen. Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Albert Lynn (Lyn) Smith was indicted and tried in the Circuit Court of DeSoto *157 County for the murder of Georgia Smith, his wife. The jury found Smith guilty of manslaughter and he was sentenced by the court to a term of eighteen (18) years in the custody of the Mississippi Department of Corrections. He has appealed to this Court and assigns six (6) errors in the trial below.

I.

THE LOWER COURT ERRED IN FAILING TO SUSTAIN THE MOTION FOR DIRECTED VERDICT AND REQUEST FOR PEREMPTORY INSTRUCTION MADE BY DEFENDANT AT THE CONCLUSION OF ALL THE EVIDENCE BASED ON THE WEATHERSBY RULE.
Around 4:30 a.m. on August 19, 1984, the sheriff of DeSoto County was notified that an ambulance had been dispatched to a grocery store in a rural part of the county, and that there had been a shooting. When the sheriff, deputies and ambulance arrived at the grocery store, they found appellant waiting. The following conversation took place:
Sheriff: What happened?
Appellant: I shot my wife.
Sheriff: How bad?
Appellant: Pretty bad.
Appellant led the officers and the ambulance to his house. They found the appellant's wife, Georgia, dead in the bedroom. She was nude, in bed with the covers pulled up to her neck, and she had been shot in the face with a .44-caliber revolver, which was found on the floor in the bedroom closet. There were four live cartridges and one spent cartridge in the revolver. Blood was found on the door frame leading into the bathroom; there was blood on the bathroom light switch, and a towel with some blood on it was found in the bathroom sink. The officers also observed blood on appellant's forearm.
At trial, a crime lab technician testified that a blood sample taken from appellant at 8:00 a.m. tested positively for .09% alcoholic content; that, at the rate of alcohol dissipation, appellant's blood alcohol would have been .12% at the time of the shooting four hours earlier; and that the percentage of alcohol in his blood meant that appellant was legally intoxicated at the time of the homicide.
According to an FBI crime lab technician, appellant's hands tested negative for the presence of gunpowder, and the victim's hands tested positive. The record indicates that after the shooting, appellant washed his hands. The tests meant that the victim was shot at close range.
A bar maid testified that a week before the shooting she saw appellant in the bar where she worked and overheard him say to another person, "I will kill her. She will not take what I got."
The victim was employed as a bank teller, and, according to three of her co-workers, appellant and his wife had been having difficulties, the victim was unhappy, and the appellant had a violent temper. The victim's mother testified that the marriage was an unhappy one; that appellant had a violent temper; and that she had witnessed arguments and altercations between appellant and the victim.
Appellant's defense was to the effect that he came home about 4 a.m.; his wife began fussing at him; he went to the bathroom and, upon returning to the bedroom, he found his wife sitting up in bed with a pistol pointed at him; she said, "I'm going to put an end to this once and for all;" that he grabbed for the gun, fell on top of his wife, and while they were struggling over the gun, it fired accidentally.
We have said before and now repeat that it is a rare case that meets the requirements of the rule in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). Berry v. State, 455 So.2d 774, 776 (Miss. 1984). The Weathersby question is not only whether the evidence conflicts, but also whether the evidence is contrary to the physical facts, and what reasonable conclusions may be drawn from the uncontradicted evidence. Burge v. State, 472 So.2d 392, 396 (Miss. 1985).
In the case sub judice, appellant was the only eye witness to the homicide and he claims that the victim was accidentally *158 shot and killed. We think that the appellant's account of what happened is substantially contradicted in the following particulars:
(1) The photographs of the scene showed no signs of the struggle which appellant described in his testimony.
(2) Appellant's account of how the victim was holding the gun showed that it would have been mechanically impossible to fire it.
(3) There was conflicting testimony regarding the appellant's marriage and his reputation for peace or violence.
(4) The evidence adduced at trial indicated that appellant's mental faculties at the time of the shooting may have been adversely affected by alcohol and/or drugs. Expert testimony indicated alcohol and codeine were found in appellant's urine and/or blood indicating he was intoxicated at the time of the shooting.
(5) When the sheriff first saw appellant at the grocery store, appellant said, "I shot my wife... . pretty bad."
We are of the opinion that the facts constituted a guilt issue for the jury to determine and that the verdict of the jury is supported by the evidence.
Assigned Error I is rejected.

II.

THE LOWER COURT ERRED BY NOT REQUIRING THE STATE TO PRODUCE ORAL STATEMENTS MADE BY THE DEFENDANT TO LAW ENFORCEMENT OFFICERS.
Pursuant to Rule 4.06, Mississippi Uniform Criminal Rules of Circuit Court Practice, appellant requested a copy of any recorded statement of appellant made to any law enforcement officer. Two months prior to trial, the State responded, "No recorded statement exists. Defendant made oral statements to James Albert Riley [sheriff] Jack Bartholemew [investigator] and Jack B. McCauley [investigator] on August 19, 1984."
The oral statement refers to that already mentioned where appellant told the officers at the grocery store he shot his wife.
Although appellant knew two months in advance of trial that the oral statement had been made to the officers, he claims that he only learned of the substance of the statements at the suppression hearing. During the trial, the defense questioned the sheriff about other oral statements of the appellant. The judge refused to allow the line of questioning on the basis that such testimony was self-serving. However, the jury was excused, and the sheriff stated the only other oral statement given by appellant was that he did not know where the gun was and that he might have thrown the gun away on the road to the grocery store. This latter statement was not disclosed to the jury. The appellant and his counsel knew that the gun had been found in the closet of the bedroom.
This Court has held that oral statements given to law enforcement authorities are discoverable under Rule 4.06. Franklin v. State, 460 So.2d 104 (Miss. 1984). The State disclosed that oral statements were made and specified to whom they were made, but failed to give the substance of the statements. We are of the opinion that the State's failure to disclose the substance of an oral statement(s) was made two months before trial, i.e., "I shot my wife ... pretty bad," did not result in a miscarriage of justice.
During the direct examination of investigator Jack McCauley, called by the State, the witness made reference to a certain page of handwritten notes he prepared at the crime scene. This reference was made to ascertain the exhibit numbers assigned to items of evidence collected at the scene. On cross-examination, the defense established that appellant had made oral statements to the witness and that the witness had recorded those statements in the same handwritten notes he referred to on direct. The defense then objected on Rule 4.06 grounds, noting the State's discovery response that "[n]o recorded statement exits." The trial judge conducted an in-camera review of the notes and held that the defense could not cross-examine the witness on those statements because they *159 were self-serving. However, "out of an abundance of precaution," the judge ruled that the defense should be allowed access to the notes before proceeding further. The defense read the notes and announced that it was ready to continue. Cross-examination then proceeded without any further mention of the notes or the statements recorded therein.
Although appellant made a timely objection to the notes, after examining them, he failed to move for a continuance or a mistrial and announced that he was ready to proceed. He failed to make a proper motion to preserve his objection. See Shaw v. State, 521 So.2d 1278 (Miss. 1987); Griffin v. State, 504 So.2d 186, 195 (Miss. 1987); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985).
The assigned Error II is rejected.

III.

THE LOWER COURT ERRED IN NOT ALLOWING DEFENDANT AN OPPORTUNITY TO INSPECT AND TO TEST THE ALLEGED WEAPON PRIOR TO TRIAL.
Appellant's discovery request sought access to the murder weapon in order to "inspect ... test, and photograph" it and to "examine" the gun "and any projectiles that were removed from the body of the deceased... ." The weapon was in the possession of the State Crime Lab until the night of Friday, February 22, 1985; the trial started Monday, February 25, and, at that time, the appellant and his counsel had not seen the weapon. After the jury had been empaneled, but before the first witness was called, appellant's attorney advised the court that he had not yet examined the gun, and the lower court ruled on the request with the following language:
[T]he weapon can be examined in the presence of the Defendant, defense counsel and State's attorneys, and then beyond that, if there's any further request, I'll just have to deal with it at that point.
Appellant contends that there was a Rule 4.06 discovery violation, which constitutes reversible error. The question here may be answered by the discussion and decision in appellant's assigned Error II. With reference to this point, appellant objected that he had not seen the weapon and, in response, the lower court afforded him and counsel the opportunity to examine it. After this examination of the weapon, the lower court stated that its general practice was not to require further discovery from the State absent appellant's motion to compel. The court then asked, "Anything further from the Defendant? [No response indicated.] We are ready for the Jury." The trial then proceeded with the first witness.
The appellant had the opportunity to initially inspect the weapon, and, if he still felt that his defense would be prejudiced, then under the authority cited supra it was incumbent upon him to request a continuance. The time to do so was when the trial judge asked, "Anything further from the Defendant?"
Although the trial judge's statement that it was necessary for the defendant/appellant to seek an order to compel was incorrect [Stewart v. State, 512 So.2d 889 (Miss. 1987); Foster v. State, 484 So.2d 1009 (Miss. 1986)], nothing in those comments suggested that the court was unwilling to require such other discovery to defense counsel as justice might require. We are of the opinion that there was no reversible error.
The assigned Error III is rejected.

IV.

THE LOWER COURT ERRED IN OVERRULING OBJECTIONS TO HIGHLY PREJUDICIAL TESTIMONY CONCERNING THE APPELLANT'S MEMBERSHIP IN A MOTORCYCLE GANG MORE THAN TWELVE (12) YEARS PRIOR TO THE ALLEGED HOMICIDE AND ERRED IN FAILING TO GRANT A MISTRIAL FOLLOWING THE PROSECUTOR'S COMMENTS ON SAID TESTIMONY.
Appellant's mother was called to the stand by counsel for appellant to testify as to his good marriage and his good reputation for peace and veracity. During cross-examination of the witness by the prosecutor, she was asked by him:

*160 (1) Did anyone ever discuss with you the fact that your son was a member of a motorcycle gang at one time in Memphis?
(2) What motorcycle gang was it, ...?
Counsel for the appellant objected, and the assistant district attorney replied that the appellant had offered her as a witness concerning his reputation. There was argument by both the State and the defense, and the trial judge said "Well, based on the status of the record, I'll overrule the objection."[1]
The prosecutor pursued the line of questioning about the motorcycle gang and during the cross-examination asked the question, "Is that what they are or are they a gang of outlaws and hoodlums that ride up and down the streets of Memphis ...?" The counsel for appellant objected again specifically since the event occurred approximately seven (7) to ten (10) years previous. Assistant District Attorney Buntin stated: "Judge, our position is that a leopard just doesn't change its spots that easily." Counsel for appellant objected and moved for a mistrial. Thereupon, the court ruled:
I'll overrule the motion. I'll sustain the objection, and overrule the motion. The Jury will disregard the last remark by the District Attorney.
Subsequent testimony of appellant revealed that he had been a member of the motorcycle gang from 1966 to 1972. Thus, the probative value of appellant's membership in the gang was questionable on its own. The fact that the membership was twelve (12) years previous diminishes the value for any purpose all the more. Rule 403, Mississippi Rules of Evidence, provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." This testimony should have been excluded by the trial judge and should not have been elicited by the assistant district attorney. They both were treading in judicial quicksand.
Appellant's counsel used the motorcycle gang evidence in his case-in-chief during redirect examination of appellant, notwithstanding his claim that the evidence was irrelevant and highly prejudicial. Further, appellant's counsel twice referred to the motorcycle gang in closing arguments, viz, "We're not trying to hide his motorcycle club, we're not trying to hide his service record, we're not trying to hide anything."
In Houston v. State, 274 So.2d 133 (Miss. 1973), the State asked defendant's character witnesses certain questions about the victim's reputation. The victim's reputation was not in issue, and the questions were improper. However, defendant failed to object to this line of questioning and pursued the improper matter further on redirect of his own witness. This is what the appellant's counsel did in the case sub judice during redirect examination of appellant. Under these circumstances, the Houston Court held that the trial judge could not be put in error. Houston, 274 So.2d at 135.
In a similar case, Hill v. State, 432 So.2d 427 (Miss. 1983), cert. den. 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983), the State elicited incompetent evidence from its own witness. The defense failed to object and further developed the incompetent evidence on cross-examination of the witness. In addition, like appellant in the case sub judice, the defense made reference to the incompetent evidence during closing argument. On appeal, the introduction of the incompetent evidence was assigned as error. This Court commented that "... defense counsel's complaint at this stage appears directed toward a trial strategy in which they were participants. What this amounts to is a trial strategy counsel aided and abetted, and now seek to criticize." Hill, 432 So.2d at 439.
We are of the opinion that the admission of the evidence was error, but appellant waived the error by his failure to object at the earliest opportunity, together with his use of the evidence in his own case-in-chief and during his closing arguments.
*161 The second part of this assigned error concerns appellant's objection to the State's question, "... are they a gang of outlaws and hoodlums that ride up and down the streets of Memphis ...?" In response to the objection, the assistant district attorney stated, "Judge, our position is that a leopard just doesn't change its spots that easily." Appellant then moved for a mistrial. The trial judge properly sustained the objection to the question, but overruled the motion for mistrial. He directed the jury to "disregard the last remark by the District Attorney." At that point, the trial judge saved the assistant district attorney from burying the State's case in the judicial quicksand by sustaining the objection and admonishing the jury to disregard the remark.
The rule is well established that when an isolated prejudicial question or comment by the prosecution is promptly objected to and the objection is sustained, and particularly when the circuit judge instructs the jury to disregard the incident, there is a presumption the action on the part of the trial court cured the error. West v. State, 485 So.2d 681, 689-90 (Miss. 1985), cert. den. 479 U.S. 983, 107 S.Ct. 570, 93 L.Ed.2d 574 (1986). McFee v. State, 511 So.2d 130 (Miss. 1987); Stringer v. State, 477 So.2d 1335 (Miss. 1985); Johnson v. State, 475 So.2d 1136 (Miss. 1985); Sand v. State, 467 So.2d 907 (Miss. 1985); Fairley v. State, 467 So.2d 894 (Miss. 1985), cert. den. 474 U.S. 855, 106 S.Ct. 160, 88 L.Ed.2d 133 (1985).
The assigned Error IV is rejected.

V.

THE LOWER COURT ERRED IN ALLOWING THE STATE ON REBUTTAL TO CONTRADICT THE TESTIMONY OF APPELLANT AND APPELLANT'S WITNESSES ON IMMATERIAL AND COLLATERAL MATTERS.
Appellant's case-in-chief dealt with two phases, i.e., (1) appellant told his version of what happened on the night of August 19, 1984, when his wife was killed; and (2) relatives and acquaintances of appellant told of his good character and happy marriage. Examples follow: "I loved my wife dearly. She was not only my wife, she was my business partner and my companion, and the best friend I have ever had." Appellant's mother testified, "And as far as I can say, they had a good marriage... . He worshipped the ground that she walked on." A friend of the victim testified for the defense that the victim "was very happy with him [appellant]... . and she was just, you know, bubbling over that she had the life that she was wanting."
The State's rebuttal evidence concerning which appellant complains in assigned Error V consisted of questions propounded to appellant's character witnesses on cross-examination, as follows:
Have you heard that on occasion he's hit his wife and knocked her across a chair?
And if you heard that he threatened his wife with a telephone, threatened to beat her in the presence of her own mother, that wouldn't change your opinion of it either, would it?
And if you heard that he cursed his wife, called her all kinds of vile names in the presence of her own mother  have you heard about that?
And you've never heard about the defendant ever pushing his wife so hard he knocked across a chair, have you?
If he cursed his wife out in front of her own mother, would that change your opinion of him?
On cross-examination of appellant, the State asked:
Did you have many arguments where it got so bad that you cursed her and threatened to hit her?
Do you recall getting so mad because she didn't say what you wanted her to say that you jerked the phone back and told her you ought to shove it through her head?
Well, do you recall an incident while your mother-in-law was visiting where you were sitting watching TV and you asked your wife to bring you another drink ... and y'all had a violent quarrel?
Appellant failed to object to the above questions at trial. It is elementary *162 that, for preservation of error for review, there must be contemporaneous objections. Lockett v. State, 517 So.2d 1317 (Miss. 1987); Thomas v. State, 517 So.2d 1285 (Miss. 1987); Burney v. State, 515 So.2d 1154 (Miss. 1987); Booker v. State, 511 So.2d 1329 (Miss. 1987); Swindle v. State, 502 So.2d 652 (Miss. 1987); Temple v. State, 498 So.2d 379 (Miss. 1986); Kelly v. State, 493 So.2d 356 (Miss. 1986).
The victim's mother testified in the State's rebuttal case that she witnessed three altercations between appellant and the victim in which appellant threatened and cursed the victim. Also, a co-worker of the victim testified that the victim told her of an incident when appellant became drunk and held a knife to her throat. This testimony was objected to by appellant on the ground that the evidence constituted improper rebuttal. This Court has held in a similar case that where a defendant on trial for the murder of his wife testified in his case-in-chief of his great love for his wife, the State was entitled to put on testimony to the contrary in rebuttal. Breakfield v. State, 275 So.2d 860 (Miss. 1973); See generally United States v. Delk, 586 F.2d 513 (5th Cir.1978).
Appellant by the testimony of himself and witnesses opened the door to these matters in his case-in-chief. Therefore, he has no ground to complain of the State's attempt to contradict the same in its rebuttal case.
The assigned error is rejected.

VI.

THE LOWER COURT ERRED IN ALLOWING THE STATE'S WITNESS, SHARON JONES, TO TESTIFY ON MATTERS OUTSIDE HER AREA OF EXPERTISE.
Sharon Jones was employed by the State Crime Lab as a forensic scientist specializing in "blood alcohol concentration determination." She held a Bachelor of Chemistry degree from Jackson State University and had performed over 2,000 blood alcohol tests. The lower court accepted her as an expert in "the field of blood alcohol determination." Appellant declined to voir dire the witness.
The State asked Miss Jones about the rate of dissipation of alcohol in the blood stream, and appellant objected on the ground that the question called for a conclusion beyond Jones' area of expertise. The objection was overruled, and Jones stated that she had "done reading on that area." She testified that blood alcohol dissipates at the rate of .015% per hour. Having previously established that a blood sample taken from appellant at 8:00 a.m. showed a blood alcohol content of .09%, Jones used simple math to determine that at 4:30 a.m. appellant's blood alcohol content would have been .12%.[2]
The qualifications of an expert in applicable fields of scientific knowledge is left to the sound discretion of the trial judge. His determination on this issue will not be reversed unless it clearly appears that the witness was not qualified. Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984); Grinnell v. State, 230 So.2d 555 (Miss. 1970).
We are of the opinion that the trial judge did not abuse his discretion in admitting the expert testimony.
The assigned Error VI is rejected.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Earlier the State had asked two of appellant's character witnesses on cross-examination "You haven't heard that he [appellant] was a member of the Syndicate Motorcycle Gang?" and "I take it, then, you've never heard anything about the Defendant being a member of a motorcycle gang?" Appellant did not object to either of those questions.
[2] Jones calculated the dissipation from 5:30 a.m.:

Approximately .03 percent of it would have dissipated, because that first hour or the first hour after the last drink is taken, the alcohol could either be going up or coming down, so the first hour  it's reaching a plateau, and from that point on to the second and the third hour, it would be decreasing.