604 So.2d 249 (1992)
John E. BAINE, a/k/a "Red" Baine
v.
STATE of Mississippi.
No. 89-KA-0794.
Supreme Court of Mississippi.
June 10, 1992.
*250 Thomas H. Pearson, Cheryl Ann Webster, Clarksdale, for appellant.
Michael C. Moore, Atty. Gen., Jackson, for appellee.
*251 Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
John E. Baine, a/k/a "Red" Baine, appeals from his conviction under Miss. Code Ann. § 97-5-23 (Supp. 1988) of touching a child for lustful purposes. Baine was tried before a jury in the Circuit Court for the Second Judicial District of Panola, on change of venue from the Circuit Court of Coahoma County, on September 6 and 7, 1988, and was found guilty. On September 9, 1988, he was sentenced to serve five (5) years to be served only in custody of the Mississippi Department of Corrections, said sentence to run consecutively to the sentences imposed in Causes 7350, Count I and Count II, Coahoma County Circuit Court. Baine appeals and assigns the following as error:
I. THE TRIAL COURT ERRED IN THAT IT ALLOWED DR. TIMOTHY SISEMORE, A CLINICAL PSYCHOLOGIST, WHO QUALIFIED AS AN EXPERT IN THE FIELD OF CLINICAL PSYCHOLOGY, SPECIALIZING IN CHILD ABUSE, TO TESTIFY TO THE ALLEGED CHILD ABUSE VICTIM'S OUT OF COURT STATEMENTS AND TO TESTIFY TO THE FACT THAT THE ALLEGED VICTIM WAS IN FACT AN ABUSED CHILD.[1]
II. THE TRIAL COURT ERRED IN THAT IT DID NOT GRANT THE DEFENDANT A MISTRIAL UPON THE STATE OF MISSISSIPPI SOLICITING CERTAIN INADMISSIBLE, IMPROPER, AND HIGHLY PREJUDICIAL EVIDENCE FROM THE WITNESS, ANITA REGINELLI, AFTER THE TRIAL COURT HAD PREVIOUSLY RULED THAT THE DEFENSE WAS NOT ENTITLED TO AN ORDER SUPPRESSING REGINELLI'S TESTIMONY BASED ON THE STATE OF MISSISSIPPI'S ASSURANCES THAT IT WOULD NOT SOLICIT SUCH TESTIMONY FROM REGINELLI.
Finding that neither assignment merits reversal, we affirm.

FACTS
Red Baine ("Baine") and his wife, Bobbie Baine operated a day care center in Clarksdale, Mississippi. W.V.,[2] then nine years old, attended the center from June through September of 1986. W.V., an eleven-year-old sixth grader at the time of trial, testified that during the time she attended the Baine Day Care Center, Baine touched her "in the wrong place" about once a day around lunch time, sometimes in Baine's bedroom. According to W.V., Baine placed his hand under her clothing and underwear and touched her between her legs, on her buttocks, and on her breast area. When asked whether Baine's hands were "still" or "moving around," W.V. responded that "[t]hey were moving around." W.V. added that when the alleged touching occurred, she and Baine were often lying on the bed watching television. On cross-examination, W.V. testified that she got on the bed voluntarily and that there were other places in the house where she could have watched television. She professed not to know why she did not tell other day care workers Baine was allegedly doing to her, but she stated that she did not tell her mother because she was afraid her mother would not believe her.
Eleven-year-old J.H. testified that she, too, attended the Baine Day Care Center. When asked if she had seen "anything bad or unusual happen to [W.V.]," she stated that "Mr. Red stuck his hand down her pants." She further testified that the activity occurred while Baine and W.V. were *252 lying on the bed after lunch watching television.
N.Y., another eleven-year-old, also testified that "Mr. Red touched [W.V.] in a bad way." She then added: "In bad spots, too... . In her breast and on the bottom." When asked whether Baine had touched W.V. on the front or back of the bottom, she responded: "Both." The prosecutor asked N.Y. to describe how Baine touched W.V. to which the witness responded: "He was rubbing and squeezing." N.Y. testified that the incidents happened "a lot."
Brenda Spinosa testified that she had used the services of Baine Day Care Center prior to February, 1987. In July, 1986 she went in the Baine's house to pick up her child and observed Baine lying on his bed with his arms around W.V. and another female child. The sight struck her as "unusual."
B.V., W.V.'s mother, testified that W.V. continually begged not to have to go to Baine Day Care Center. B.V. stated that during the period W.V. was attending the center,
[t]here was a tremendous change in my child in that the fact that my child would not sleep in her own bedroom. She would get up during the night and come and sleep on the floor either on my side of the bed or my husband's side of the bed. That continued about six months. For the last year and a half my child has been in the bedroom, sleeping in the bed with me and my husband in the center. She will not even play in her room and she will not sleep in her room.
The mother took W.V. to Memphis, Tennessee for counseling with Dr. Timothy Sisemore, a clinical psychologist.
Over a continuing objection interposed by the defense, Dr. Sisemore testified that W.V. had told him that she had been touched and rubbed between her legs, on her buttocks, and in the breast area. W.V. allegedly stated that the touching occurred inside her clothes and underwear.
Anita Reginelli, a social worker for the East Bolivar County Welfare Department testified that she had interviewed W.V. According to Reginelli, W.V. "appeared embarrassed, frightened." Reginelli further testified that her office had classified the W.V. report as "substantiated sexual abuse."
The defense called a number of witnesses including mothers of other children who had attended the Baine Day Care Center, a neighbor of the Baine, Baine's son, and Baine's wife. Each of these witnesses testified that they had observed no untoward conduct on the part of Baine. Baine himself took the stand and testified that while he had hugged, patted, and touched W.V. in a "loving way," he had never placed his hands under her clothes, had never harbored or exhibited lustful or sexual desire for the child, and had never lain on a bed with her.

LAW

I. WHETHER THE TRIAL COURT ERRED IN ALLOWING DR. TIMOTHY SISEMORE, A CLINICAL PSYCHOLOGIST, TO TESTIFY CONCERNING W.V.'S OUT-OF-COURT STATEMENTS?
W.V. attended eight counseling sessions with Dr. Timothy Sisemore, a clinical psychologist. The purpose of these meetings was to enable Dr. Sisemore to form an opinion concerning whether W.V. had encountered sexual abuse and to provide treatment for the emotional trauma arising from the alleged abuse. Testifying for the prosecution, Sisemore discussed his meetings with W.V. and the conclusions he drew therefrom. Prior to trial, the defense filed a motion in limine seeking to prevent Sisemore from revealing what W.V. had told him concerning the details of her alleged encounters with Baine. The trial court overruled the motion, holding that such declarations, although hearsay, would be admissible under MRE Rule 803(4). At the time of the trial below, Rule 803(4) read as follows:
Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, *253 or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Baine argues that since psychologists do not engage in "medical" diagnosis or treatment, Rule 803(4) is inapplicable to statements W.V. made to Dr. Sisemore.
When the trial court considered Baine's motion in limine, we had not yet addressed the question of whether the Rule 803(4) exception to the hearsay rule extended to statements made to psychologists. A few months later, the Court tip-toed around the subject in Hall v. State, 539 So.2d 1338 (Miss. 1989). In holding that the hearsay testimony of two social workers did not fit within any of the Rule 803 exceptions, the Court noted in passing that the hearsay statements were not "made for purposes of medical diagnosis or treatment." Hall, 539 So.2d at 1342. While not explicitly stating that Rule 803(4) did not apply to statements concerning mental as opposed to physical health, the Court observed in a footnote that Rule 803(4) "statements may be made either to a physician or to diagnostic medical personnel." Hall, 539 So.2d at 1342 n. 7.
In Mitchell v. State, 539 So.2d 1366 (Miss. 1989), a decision handed down three weeks after Hall, the Court again alluded to but did not decide the issue. Although the Mitchell case apparently did not involve the testimony of a mental health professional, the Court stated in dicta that "many courts, State and Federal, with evidence rules similar to ours admit statements by child sexual abuse victims to physicians and psychologists while being examined, diagnosed, and treated following an incident of sexual abuse under exceptions analogous to MRE 803(4)." Mitchell, 539 So.2d at 1368 (emphasis added). The clear implication is that the Mississippi rule is subject to a construction similar to that imposed in other jurisdictions. The issue was clouded somewhat, however, by Leatherwood v. State, 548 So.2d 389 (Miss. 1989) wherein the Court held that statements made by a child rape victim to a social worker employed by a mental health center were not covered by the Rule 803(4) exception. Id. at 398. The Court noted that the social worker "was not a physician nor may the services she rendered be stretched into the world of the medical." Id.
A 1991 amendment to MRE Rule 803(4) settled the matter once and for all. The Rule now reads as follows:
Statement for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

(emphasis indicates language added pursuant to 1991 amendment). According to the comment to Rule 803(4), "[t]he amendment ... is a recognization that medical diagnosis and treatment may encompass mental and emotional conditions as well as physical conditions." Clearly, statements which are reasonably pertinent to psychological diagnosis or treatment are covered by the rule as it presently reads.
The court below, of course, had the benefit of neither the 1991 amendment to Rule 803(4) nor the 1989 cases cited above. But as this Court hinted in Mitchell, even the original language of Rule 803(4) is sufficient to support the judge's ruling. It is settled in the federal courts that the "medical diagnosis and treatment" language in FRE Rule 803(4) includes matters psychological even though the federal rule, like the pre-1991 Mississippi version, does not expressly define "medical" in terms of emotional and mental health. See, e.g., United States v. Spotted War Bonnet, 933 F.2d 1471, 1472 (8th Cir.1991); *254 United States v. Provost, 875 F.2d 172, 177 (8th Cir.1989); Morgan v. Foretich, 846 F.2d 941, 949 n. 17 (4th Cir.1988); United States v. LeChoco, 542 F.2d 84, 89 n. 6 (D.C. Cir.1976); see also Annotation, Admissibility of Statements Made for Purposes of Medical Diagnosis or Treatment As Hearsay Exception Under Rule 803(4) of the Federal Rules of Evidence, 55 A.L.R.Fed. 689, 699 (1981). Moreover, most states having hearsay exceptions equivalent to the federal Rule 803(4) also include within the rule's coverage statements made to psychologists. See, e.g., Dolny v. State, No. C5-91-23, 1991 WL 109230 (Minn. Ct. App. June 25, 1991) (WESTLAW, MN-CS file) (unpublished opinion); Drumm v. Commonwealth, 783 S.W.2d 380 (Ky. 1990); State v. Edward Charles L., 183 W. Va. 641, 398 S.E.2d 123 (1990); Maryland Department of Human Resources v. Bo Peep Day Nursery, 317 Md. 573, 565 A.2d 1015, 1022-23 (1989); Macias v. State, 776 S.W.2d 255, 258-59 (Tex. Ct. App. 1989); State v. Wall, No. 13531 (Ohio Ct. App. Oct. 19, 1988), 1988 WL 110852 (WESTLAW, OH-CS file) (unpublished opinion); State v. Bullock, 320 N.C. 780, 360 S.E.2d 689 (1987); State v. Nelson, 138 Wis.2d 418, 406 N.W.2d 385, 391 (1987); State v. Robinson, 153 Ariz. 191, 735 P.2d 801 (1987); In re Welfare of R.T., 364 N.W.2d 884, 886-87 (Minn. Ct. App. 1985). But see State v. Barone, No. 01-C-019008CR00196 (Tenn. Crim. App. Oct. 2, 1991), 1991 WL 194148 (WESTLAW, TN-CS file) (unpublished opinion); State v. Gokey, 154 Vt. 129, 574 A.2d 766 (1990).
We do not classify a psychologist as a medical doctor. Nevertheless, in light of the prevailing authority, the trial court was probably justified in admitting Dr. Sizemore's testimony under the old 803(4) exception. Even if the trial court erred, however, the error would clearly be harmless. Were we to grant Baine a new trial, the second trial would be governed by the revised 803(4) exception which expressly permits testimony of the kind Baine contests here.
Baine attacks the hearsay testimony of Dr. Sisemore on several other grounds, none of which have merit. First Baine argues that since the victim herself testified, Dr. Sisemore's testimony concerning what the victim told him constituted evidence of "prior consistent statements." According to Clanton v. State, 539 So.2d 1024, 1028 (Miss. 1989), prior consistent hearsay statements cannot be used to bolster the testimony of a witness. Clanton is good law, but it does not apply here for two reasons. First, Dr. Sisemore's testimony falls within the Rule 803(4) hearsay exception  an exception to which the availability of the declarant is "immaterial." See Rule 803 (statements covered by rule are not excluded "even though the declarant is available as a witness"). Secondly and more importantly, Dr. Sisemore's testimony was not offered to bolster the victim's testimony. Rather, Dr. Sisemore related what W.V. had told him in order to establish a basis for his opinion that she had suffered sexual abuse.
Baine also asserted at the voir dire of Dr. Sisemore that W.V.'s out-of-court statements were not credible since she made them subsequent to a group therapy session. Baine insisted that W.V.'s story might have been colored by the statements of other sexually abused children. The trial judge ruled that credibility was a question for the jury. In this he was entirely correct. Fisher v. City of Eupora, 587 So.2d 878, 889 (Miss. 1991); Sudduth v. State, 562 So.2d 67, 70 (Miss. 1990); Byrd v. State, 522 So.2d 756, 760 (Miss. 1988); Ashford v. State, 583 So.2d 1279, 1282 (Miss. 1991) (McRae, J., dissenting). Under the revised Rule 803(4), Mississippi trial courts may engage in a discretionary determination of the whether "the proffered statements were made under circumstances substantially indicating their trustworthiness." See Rule 803(2) (West 1991). The official comment relating to the amended rule observes that "the rule, by requiring the judge to find trustworthiness, gives the trial judge greater discretion than the original rule." The trial court below was not afforded such discretion, and thus rightly referred all questions of credibility to the jury. It is noteworthy that since Baine was afforded an opportunity to cross-examine both W.V. and Dr. Sisemore, the questions Baine raises concerning the credibility of the declarant do not impinge upon his Sixth Amendment right to confrontation. *255 See Hansen v. State, 592 So.2d 114, 132-34 (Miss. 1991); Harrison v. State, 534 So.2d 175, 182 (Miss. 1988); Lanier v. State, 533 So.2d 473, 488 (Miss. 1988); Stoop v. State, 531 So.2d 1215, 1221 (Miss. 1988).

II. WHETHER THE TRIAL COURT ERRED IN ALLOWING DR. TIMOTHY SISEMORE, A CLINICAL PSYCHOLOGIST WHO QUALIFIED AS AN EXPERT IN THE FIELDS OF CHILD PSYCHOLOGY AND CHILD ABUSE, TO TESTIFY THAT THE ALLEGED VICTIM WAS IN FACT AN ABUSED CHILD?
Baine devotes only a sentence or so to this particular issue in his appellate briefs. Without citing any authority and without explaining further, he merely states: "The testimony admitted over the defendant's objections was highly prejudicial and inflammatory. It was to the effect that the alleged child abuse victim was an abused child... ." In the absence of meaningful argument and citation of authority, this Court generally will not consider an assignment of error. Govan v. State, 591 So.2d 428, 431 (Miss. 1991); Estes v. State, 533 So.2d 437, 440 (Miss. 1988); Crenshaw v. State, 520 So.2d 131, 135 (Miss. 1988); Harris v. State, 386 So.2d 393, 396 (Miss. 1980).
Even if we were to consider the merits of the assignment, however, Baine would not be entitled to prevail. Contrary to the allegations in Baine's brief, Dr. Sisemore never stated that W.V. was in fact an abused child, nor is it clear that he had formed an opinion to that effect.[3] But even assuming Dr. Sisemore did testify in the manner Baine accuses him of, there is no apparent reason why such testimony would be inadmissible. MRE Rule 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
It is true that a plurality of this Court has questioned the admissibility of expert opinion testimony in the area of child sexual abuse. See Goodson v. State, 566 So.2d 1142, 1147-49 (Miss. 1990). In the instant case, however, the defense never questioned Dr. Sisemore's considerable qualifications as an expert in the field of child psychology and child sexual abuse. The matter is therefore controlled by Hosford v. State, 560 So.2d 163 (Miss. 1990) wherein this Court stated:
In the present case, appellant objected to the substance of [the expert witness's] testimony, but never objected to her credentials as an expert or to the legitimacy of the field of child therapy... . In Ivy v. State, 522 So.2d 740, 743-44 (Miss. 1988), this Court refused to disqualify an expert witness where proper objection was not preserved. See also May v. State, 524 So.2d 957 (Miss. 1988).
Hosford, 560 So.2d at 168.
Baine's failure to preserve a proper objection likewise prevents this Court from considering the validity of Dr. Sisemore's opinion, assuming arguendo that he expressed one.

III. WHETHER THE TRIAL COURT ERRED IN DENYING BAINE A MISTRIAL AFTER THE PROSECUTION ELICITED INADMISSIBLE, IMPROPER, AND HIGHLY PREJUDICIAL EVIDENCE WHILE EXAMINING WITNESS ANITA REGINELLI?
Prior to trial, Baine moved for an order to suppress the testimony of Anita Reginelli, *256 a social worker who had interviewed W.V. In arguing his motion, Baine asserted that the prosecution intended to use Reginelli's testimony to indirectly prove the truth of the matters asserted by W.V. to the witness. The trial court ruled that Reginelli could not testify as to the content of the victim's out-of-court statements. However, the court denied Baine's motion to suppress after receiving assurances from the prosecution that Reginelli's testimony would be used only to illustrate "a rational progression in the investigation." During direct examination, Reginelli testified generally concerning how she became involved in the case and described W.V.'s demeanor during their interview. She also indicated that she had referred the V's to a mental health counselor. At this point, the transcript reveals the following:
Q [BY PROSECUTOR]: How did you classify, Ms. Reginelli, this report? How did you classify that in your office?
A. According to our policy, we considered it a substantiated sexual abuse.
Q. What is your policy?
BY MS. WEBSTER [COUNSEL FOR DEFENSE]: To which we would object, your Honor. May we approach the bench?
BY THE COURT: Yes, you certainly may.
(WHEREUPON, ALL COUNSEL FOR BOTH PARTIES APPROACH THE BENCH FOR A CONFERENCE OUT OF THE HEARING OF THE COURT REPORTER.)
BY THE COURT: Motion denied. Ladies and gentlemen of the jury, you will disregard that last question and answer. Do each of you tell me you can do that? It was improper, what her conclusion or opinion was. It is not admissible in this case. Can you follow the Court's instruction in this regard and disregard that? All of you tell me you can and will? (jurors nodding heads up and down) All right, thank you.
During a subsequent conference in chambers, the trial judge noted on the record that the defense had moved for a mistrial upon coming to the bench and that the motion had been overruled. His mention of a "motion denied" immediately before giving the jury an instruction to disregard apparently referred to the off-record motion for mistrial.
Baine contends on appeal that the trial court should have granted his motion for a mistrial. He notes that the file classification represented an expression of opinion and that such an opinion was inadmissible since Reginelli was not qualified as an expert. He further observes that the opinion was based on the hearsay which the court had ruled inadmissible at the suppression hearing. By eliciting this indirect hearsay, Baine asserts, the prosecution "flagrantly disregarded" the rulings of the trial court and placed evidence before the jury which was inflammatory and highly prejudicial.
First, there is no indication that the prosecution's question constituted "flagrant disregard" for the trial court's prior ruling that the state could not introduce hearsay through Reginelli's testimony. To the extent the file classification was based on what W.V. told Reginelli, its disclosure did indeed constitute inadmissible hearsay, albeit indirect. Since the hearsay was indirect, however, it is entirely possible that the prosecutor elicited the testimony without appreciating its character. If so, the state's violation of the prior ruling would have been inadvertent, not "flagrant." The record contains nothing to support Baine's allegation of prosecutorial impropriety.
Secondly, it is clear from the record that the trial judge implicitly sustained the objection to Reginelli's improper testimony, instructed the jury to disregard it, and polled the jury to insure compliance with his instruction. This Court has repeatedly and consistently held that such action is sufficient to remove any prejudice resulting from the improper testimony. See Dennis v. State, 555 So.2d 679, 682-83 (Miss. 1989) (improper speculative testimony rendered non-prejudicial when trial court sustained objection and instructed jury to disregard it); Wright v. State, 540 So.2d 1, 4 (Miss. 1989) ("Absent unusual circumstances, where objection is sustained to *257 improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error"); Marks v. State, 532 So.2d 976, 982 (Miss. 1988) (refusal to grant mistrial was proper where trial court sustained objection and instructed jury to disregard improper testimony); see also Smith v. State, 530 So.2d 155, 161 (Miss. 1988); Wetz v. State, 503 So.2d 803, 810 (Miss. 1987); West v. State, 485 So.2d 681, 689-90 (Miss. 1985), cert. denied, 479 U.S. 983, 107 S.Ct. 570, 93 L.Ed.2d 574 (1986); McFee v. State, 511 So.2d 130, 135 (Miss. 1987); Stringer v. State, 477 So.2d 1335 (Miss. 1985); Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985); Sand v. State, 467 So.2d 907 (Miss. 1985); Fairley v. State, 467 So.2d 894 (Miss.), cert. denied, 474 U.S. 855, 106 S.Ct. 160, 88 L.Ed.2d 133 (1985); May v. State, 460 So.2d 778, 783 (Miss. 1984); Herron v. State, 287 So.2d 759, 766 (Miss.), cert. denied, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974). The jury is presumed to have followed the court's instruction. Reynolds v. State, 585 So.2d 753, 755 (Miss. 1991); Crenshaw v. State, 520 So.2d 131 (Miss. 1988); McFee, 511 So.2d at 135; Johnson, 475 So.2d at 1142; Harmon v. State, 453 So.2d 710 (Miss. 1984).
Of course, if the inadmissible testimony is so damaging that its effect upon the jury could not be adequately tempered by admonition or instruction, the trial court should grant a mistrial. Reynolds, 585 So.2d at 755; Davis v. State, 530 So.2d 694, 697 (Miss. 1988). The trial judge, however,
is in the best position to determine if a remark is truly prejudicial, [and] is given considerable discretion to determine whether a remark creates irreparable prejudice necessitating a mistrial. Where the remark creates no irreparable prejudice, then the trial court should admonish the jury to disregard the improper remark. Roundtree v. State, 568 So.2d 1173, 1177 (Miss. 1990).
Reynolds, 585 So.2d at 755.
The court below determined that an admonition would be sufficient to remove the prejudice of Reginelli's improper testimony, and nothing in the record indicates that the court abused its discretion in so choosing.
Accordingly, Baine's assignment of error has no merit.

CONCLUSION
None of Baine's assignments of error require reversal. The hearsay testimony of Dr. Timothy Sisemore was admissible since the pre-1991 version of Rule 803(4) was probably broad enough to cover statements made to clinical psychologists in a diagnostic or treatment setting. In any event, the error was harmless since the rule has now been revised so as to expressly include such statements. Further, under the applicable version of Rule 803(4), the credibility of the out-of-court statements was entirely a matter for the jury to determine. The admission into evidence of Dr. Sisemore's implicit opinion that W.V. was a victim of child sexual abuse does not constitute grounds for reversal since the defense never questioned Dr. Sisemore's qualifications as an expert and did not contest the legitimacy of the field of child sex abuse therapy. Finally, any prejudice resulting from the improper testimony of Anita Reginelli was cured when the trial court admonished the jury to disregard it.
For the reasons set forth above, the conviction and sentence is affirmed.
CONVICTION FOR TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIVE (5) YEARS TO BE SERVED ONLY IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE TO RUN CONSECUTIVELY TO THE SENTENCES IMPOSED IN CAUSES 7350, COUNT I AND II, COAHOMA COUNTY CIRCUIT COURT, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
NOTES
[1] This assignment of error involves two questions: (1) whether Dr. Sisemore's testimony included inadmissible hearsay, and (2) whether Dr. Sisemore should have been allowed to express his opinion concerning whether W.V. had been sexually abused. We shall discuss each issue separately.
[2] The names of the prosecutrix and witnesses through whom she could be identified have been disguised.
[3] The prosecution did ask Dr. Sisemore whether he had an opinion concerning whether W.V. was a sexually abused child, and Dr. Sisemore responded that he did. At that point the defense interposed an unsuccessful objection. After the interruption, the state continued to question the witness but neglected to specifically ask him what his opinion was. Later in the examination, the prosecution asked Dr. Sisemore whether certain statements and behavior on the part of W.V. "would be inconsistent with your opinion that [W.V.] was sexually abused." The witness responded without disowning the opinion implicit in the question. The defense would perhaps be justified in arguing, therefore, that Dr. Sisemore tacitly acknowledged having an opinion that W.V. was a victim of sexual abuse.