542 So.2d 265 (1989)
John Daniel KOLB
v.
STATE of Mississippi.
No. 58374.
Supreme Court of Mississippi.
April 12, 1989.
*266 Thomas M. Fortner, Pascagoula, for appellant.
Mike Moore, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
John Daniel Kolb was indicted by the grand jury of Jackson County for feloniously engaging in sexual penetration with M.F., a child under the age of twelve years. Venue was changed to Forrest county where he was convicted and sentenced as a recividist under Miss. Code Ann. § 99-19-81 (1977) to ten years imprisonment without parole. Upon appeal he argues the evidence did not authorize his conviction under Miss. Code Ann. §§ 97-3-95, -97 (1985), an erroneous and prejudicial cross-examination of him as to whether he was a homosexual, and erroneous admission into evidence of letters he wrote after incarceration to two acquaintances.
For the reasons which follow, we find no error and affirm.

FACTS
M.F. was born February 17, 1975. He and his mother lived in North Biloxi. He was swimming in the YMCA pool near Ocean Springs in the spring of 1985 when Kolb, a gymnastics instructor, asked him if he would like to try out for gymnastics. M. then enrolled in the program.
On Saturday, November 2, 1985, M. and his cousin D. were invited to Kolb's home in Ocean Springs, along with a number of other boys, for a cook-out. Late that afternoon when Mrs. F. went to get M. and D., Kolb asked her permission for them to spend the night with him, and they could go to the movies, and then sleep in a tent in the yard. It developed that only M., D. and a six-year-old child J. stayed. The boys did not get in the movies because the film was "R" rated. Kolb bought some beer which he drank during the course of the evening. He also took the boys to a local McDonald's.
Around 1:00 a.m. on Sunday, November 3, police officers Therese A. Vanek and Timmy Tue of the Ocean Springs police department were on patrol when they noticed two boys on a bicycle, one on the handle bars and the other peddling. The boys were M. and D., and they were waving for attention. The officers stopped, and found M. upset and excited. He reported having been sexually molested by Kolb.
*267 The parents were called, the boys' statements were evaluated by police officers, and a warrant issued for Kolb's arrest. He was taken into custody about 3:30 a.m. at his home.
While Kolb was in jail, he wrote two acquaintances, Liz Welch, a fitness instructor at the YMCA, and David Harris, the chief executive officer of the Gulf Coast YMCA. The letter to Welch contained the following:
Please forgive me for the mess I am in too [sic].... At times I was so self-centered that I forget [sic] that what I do influences others... . Although this problem is very bad, God has forgiven me... . All the good I did at the Y does not justifie [sic] my actions from the Y I know. I was very bad and sinned. I must now pay the price... . Reguarding [sic] my crime, it carries 10 years in (state prison).
The letter to Harris contained the following:
I am so sorry about all of this... . But now its [sic] over, all the sinfull [sic] things I have been doing all these years... . Now that my unfortunate position is known and out into the open I am glad. .. . I have been destroing [sic] myself for years over this problem, not knowing how to turn it around. There has never been any force in any way towards any of the willing partners. I've allways [sic] wanted a wife and family but this inter [sic] problem thier [sic] was no hope for me. Now I can get help and start a new life... . When I was seven or eight the things I've been accused of happen [sic] to me. I've been struggling with it since.
Prior to trial and under a court order, Kolb was psychiatrically evaluated by a local psychiatrist, to whom he revealed his homosexuality, extending back to his childhood. The psychiatrist made a lengthy report to the circuit judge. The contents of this report were never admitted into evidence before the jury, however.
At trial the police officers testified to M.'s being very upset, excited and having reported sexual abuse by Kolb. M. testified that when the boys returned to Kolb's house late Saturday night, Kolb got him away from the other boys, and into his bedroom. Then he told M. to take off all his clothes, and lie spread eagle. M. testified Kolb then started to lick or kiss him, and he turned his head, and then Kolb licked his neck and chest, and sucked his penis.
M. further testified that after performing this fellatio, Kolb walked with him to the tent and left. D. asked M. if Kolb had done it to him, too. After some discussion between the two, they left on Kolb's bicycle for help. When the officers went to arrest Kolb, the Martin child was still asleep in the tent.
Mrs. F. testified as to the difference between M. before and after November 3, 1985. She said that he had recurring nightmares, was afraid to go to school, and wanted to stay home. His grades had gone down, he threw up at school, and she had sought counseling for him.
Kolb's letter's to Welch and Harris were also introduced into evidence over the objection of Kolb as to relevancy.
Kolb testified in his own defense. On direct examination he testified as follows:
Q. Did you, at any time that night, do the things that M.F. has accused you of doing?
A. No. I certainly did not. I've worked many, many years with kids and loved all of them, coached them as champions of athletes, and I would never do something like that (R. 191)
Further on direct examination, he testified:
Q. Dan, did you do anything on that night, sexually, with M.F.?
A. No. I certainly did not. I've worked too many years with all my athletes and the kids to do anything like that. (R. 196-197)
Kolb also testified there was nothing in the letter to Welch admitting he had behaved improperly with M.F., and that he did not intend it to be an admission of misbehavior.
As to the letter to Harris, Kolb testified:

*268 Q. Now, you have stated some things in that letter that perhaps need some explaining. Let's say on this first page of this letter to David Harris, what  what are you referring to in that first page, Dan? What does all this mean?
A. Well, basically, this whole letter is written in November when I was first arrested  broken, men  my  mentally broken, spiritually at the bottom of everything, crying out for help to my boss, to try to explain to him that I had an alcohol problem, un  and that it was getting the best of me.
Q. You had stated in here that  you're discussing all the sinful things that you have been doing all these years.
A. Yes.
Q. What is this referring to, Dan?
A. What this means is, this is a confession that I made to David Harris, my boss, about being a reborn Christian. That anything that you do that is not done in a Christian attitude is of a sinful nature. Thinking bad about a person, wishing them harm, lying, stealing, drinking, adultery, anything like that is what I'm referring to him. Specifically, it's it's a letter to him of some of the other problems that I had that he only was aware of.
Q. Now, Dan, at some point, you say that there has never been any force in any way towards any of the willing partners. What exactly are you meaning when you say that?
A. Well 
Q. What are you talking about?
A. That's what I mean in that  David Harris, my boss, and I have had some discussions on some alcohol-related parties that I had for some Vancleave boys that were fifteen, sixteen years old, and I was called in to his office because it was reported by the Vancleave people out there. And that's what that means, that the alcohol that I had been buying them, it was not  I did not pressure them into it through peer pressure that, because your buddies are doing it, you have to do it. That's what I mean by "willing partners." That they drank the beer on their own, that I didn't pressure them, mentally pressure them into it, using peer pressure.
Q. You stated that when you were seven or eight, the things you had been accused of happened to you and that you had been struggling with it ever since.
A. Yes.
Q. What does this mean?
A. When I was seven or eight, a man had offered me alcohol and cigarettes when I was a small child in Biloxi, at a theater, behind a theater. And at that time, there was some  well  I can't really remember exactly what happened other than that I was offered it for a favor of some kind.
Q. Does anything that you have written in this letter to David Harris admit to him that you have molested or done anything improper with M.F.?
A. No. Not at all.
Q. Was it intended by you to convey that message to David Harris, that you had done something improper with M.F.?
A. No, not all. As I stated before, after being incarcerated, I turned my life and my heart over to Jesus Christ. I wanted to cleanse my soul, to pour out  to pour out everything in me to him in a letter.
On cross-examination Kolb was questioned as to whether some of the statements in the letters did not implicate him as having sexual problems as opposed to drinking and other problems. Kolb denied that they did, and the district attorney then asked him if he had not started becoming a homosexual when he was seven or eight years old. He was also asked, over defense objection, whether he had pleaded guilty to homosexual conduct some eighteen years previous.
The district attorney started to question Kolb about his statements to the psychiatrist, and the circuit judge excused the jury. The district attorney argued that the statements Kolb made to the psychiatrist were admissible, because Kolb had perjured *269 himself. However, no questions were asked Kolb in the presence of the jury about the psychiatrist's letter. Indeed, Kolb was never required to answer in chambers whether or not he had told the psychiatrist he was homosexual.

LAW
We address first whether Kolb was convicted under the proper statute. He argues on the ground of insufficiency of evidence that the offense as to which the State offered evidence did not constitute a crime under Miss. Code Ann. § 97-3-95.
The pertinent portions of Miss. Code Ann. §§ 97-3-95, -97 read:
§ 97-3-95. Sexual battery.
A person is guilty of sexual battery if he or she engages in sexual penetration with:
* * * * * *
§ 97-3-97. Sexual battery  definitions.
For purposes of sections 97-3-95 through 97-3-103 the following words shall have the meaning ascribed herein unless the context otherwise requires:
(a) "Sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, insertion of any object into the genital or anal openings of another person's body. [Emphasis added]
The evidence in this case of the conduct of Kolb, which the jury clearly believed, comes under Miss. Code Ann. § 97-3-95, -97.

THE LETTERS
Kolb's only objection to the introduction of the letters during the State's case-in-chief was their relevancy.
Rules 401 and 402 of the Mississippi Rules of Evidence (MRE) state:
RULE 401. DEFINITION OF "RELEVANT EVIDENCE"
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
RULE 402. RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.
The question is whether these letters had a tendency to make any fact that was of consequence to the determination of the outcome more probable. Put simply, did these letters make it more probable that Kolb had committed the act with which he was charged. Because the vast majority of the human race does not have sexual urges toward small children such as those manifested by Kolb, and sexual acts such as those with which he was charged are repugnant and difficult to believe, when any person is charged with such conduct it is relevant that the individual did have those sexually deviant tendencies. The letters were relevant as tending to show Kolb had such urges conjoined with the issue of whether he in fact engaged in the act with which he was charged. The weight to be given to the letters was entirely up to the jury. In Harrelson v. State, 217 Miss. 887, 891, 65 So.2d 237, 239 (1953), we stated:
The demeanor, acts and conduct of an accused, at the time and subsequent to the crime are admissible. However, this should be limited to a statement of the facts by the witness or witnesses, leaving the jury free to form its own conclusions.
This is still a good rule of law. See also, Trunnel v. State, 487 So.2d 820 (Miss. 1986); Evans v. State, 422 So.2d 737 (Miss. 1982); Yawn v. State, 220 Miss. 767, 71 So.2d 779 (1954).
Although Kolb offered no objection to the admission into evidence of the letters as violative of either or both Rules 403 and 404 of MRE, the federal courts in considering this question have held such evidence admissible. McGahee v. Massey, 667 F.2d *270 1357, cert. den., 459 U.S. 943, 103 S.Ct. 255, 74 L.Ed.2d 199 (11th Cir.1982); U.S. v. Free, 574 F.2d 1221, cert. den., 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (5th Cir.1978); Oliphant v. Koehler, aff'd. 594 F.2d 547, cert. den., 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (6th Cir.1978).
There is no merit to this assignment.
As above stated, the letters were clearly admissible to be considered by the jury to determine whether Kolb had sexual urges toward small children and did perpetrate this act on M.

CROSS-EXAMINATION AS TO HOMOSEXUALITY
On direct examination Kolb himself injected the issue of his homosexuality. He did not simply deny that he had perpetrated the act with M., but further voluntarily injected the issue by stating that he had never and would never engage in such conduct. Beyond this, he attempted to explain his letters to Welch and Harris as meaning something other than his own homosexuality.
Rule 404(a) states:
(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of Accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.
Because Kolb on direct examination specifically made it an issue of whether or not he was homosexual, it was proper cross-examination on the part of the State to question him about this character trait.
We find no error, and affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.