739 So.2d 451 (1999)
Prentiss McBEATH a/k/a Prentiss L. McBeath, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00103 COA.
Court of Appeals of Mississippi.
April 20, 1999.
*452 Edmund J. Phillips Jr., Newton, Robert N. Brooks, Carthage, Attorneys for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Prentiss McBeath was convicted of felonious child abuse of his thirteen year old stepdaughter, S.J. He alleges that the trial court erred in allowing a treating physician to testify as an expert witness regarding whether her injuries were "serious," which allegedly constituted a legal conclusion that invaded the province of the jury. However, McBeath without objection had permitted another physician earlier *453 to testify in the same manner. The issue was waived and we affirm.

FACTS
¶ 2. On October 17, 1997, thirteen-year-old S.J. was fighting with some neighborhood boys after she got home from school. The boys stood outside her apartment door yelling at her and she yelled back from within the apartment. Apparently, the noise bothered her stepfather, Prentiss McBeath. When she walked into his bedroom, he grabbed her and slammed her into a wall. Three of her teeth were knocked out. He then punched her in the face with his fist. When she fell to the floor, he kicked her in the head two or three times. He was wearing his work boots at the time. According to S.J., McBeath warned her that if she told anyone what happened, he "would do them the same way."
¶ 3. S.J.'s eight-year-old half-brother witnessed the entire incident.
¶ 4. S.J.'s mother arrived home from work that evening and took her to the emergency room. Due to the apparent seriousness of her head injuries, S.J. was sent to Jackson for further treatment. She was also treated by a local dentist. S.J. received a partial denture to replace her three missing teeth and x-rays revealed that she would require a root canal in the future.
¶ 5. McBeath was arrested and charged with the felonious abuse of a child under the age of fourteen. Following a trial held in the Leake County Circuit Court, he was found guilty.

DISCUSSION
¶ 6. Dr. David C. Henderson, the dentist who treated S.J., described her injuries. He stated that she suffered a badly bruised right eye, the entire right side of her face was swollen, three teeth were missing, one tooth was cracked, and her nose was broken. Further, x-rays revealed that the cracked tooth had become infected and would require root canal surgery. The State then asked him whether, in his professional opinion, he considered S.J.'s injuries to be serious. Dr. Henderson responded "[s]erious, as far as I'm concerned." An objection was made but overruled.
¶ 7. On appeal, McBeath argues that this statement was a legal conclusion that invaded the province of the jury. He cites the fact that "serious" injury is an element of felonious child abuse and Dr. Henderson's testimony essentially instructed the jury to find him guilty of felonious child abuse rather than misdemeanor child abuse which involves "nonserious" injuries.

A. Procedure
¶ 8. First, we address the prosecution's failure to tender Dr. Henderson as an expert witness. "The proper procedure and policy when an expert witness is offered is for the court to permit qualification by the party offering the expert witness, and then to permit voir dire by the opposite party before ruling on the competency of the witness.... [T]he failure ... to follow [this] procedure does not [per se] constitute reversible error." McNeal v. State, 617 So.2d 999,1008 n. 2 (Miss.1993) (quoting Jordan v. State, 464 So.2d 475, 486 (Miss.1985)).
¶ 9. In another case, a pathologist "was qualified by the district attorney as an expert witness but was never officially tendered for voir dire to the defense nor formally accepted by the trial court as an expert." Duplantis v. State, 708 So.2d 1327, 1338 (Miss.1998). The trial court overruled the defense counsel's subsequent objections to the questions that called for an expert opinion. Id. The supreme court affirmed, finding that "[t]he question of whether an individual is qualified to testify as an expert is committed to the sound discretion of the trial court. This Court does not reverse such decisions absent a showing that this discretion has been abused, that is, that the witness was clearly *454 not qualified." Id. at 1339 (quoting Cooper v. State, 639 So.2d 1320, 1325 (Miss.1994)). Moreover, "voir dire cross-examination of a witness unquestionably qualified to give expert testimony is unnecessary when such cross-examination would add nothing to the trial."
¶ 10. Although McBeath challenges Dr. Henderson's expert testimony, a review of the record reveals that the defense failed to object to Dr. Henderson's qualifications. The supreme court has refused to hold that an expert was not properly qualified when the opposing party did not object to the witness's credentials but only to the testimony. Baine v. State, 604 So.2d 249, 255 (Miss.1992). In other words, objections to testimony do not constitute an objection to qualifications.
¶ 11. Because McBeath failed to object to Dr. Henderson's credentials, the issue of his qualification as an expert witness was waived and we need not address it.
¶ 12. McBeath did object to the substance of Dr. Henderson's opinion, which we now consider.

B. Propriety of expert testimony
¶ 13. Mississippi Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." M.R.E. 702. "[T]he opinion must still be `helpful' to a determination of the case" and not just address facts within a juror's common knowledge. May v. State, 524 So.2d 957, 964 (Miss.1988).
¶ 14. The comment to the rule is also helpful. "It is important to note that Rule 702 does not relax the traditional standards for determining that the witness is indeed qualified to speak an opinion on a matter within his purported field of knowledge. Nor does 702 relax the requirement that the scientific principle from which the expert's opinion is derived `must be sufficiently established to have gained general acceptance in the particular field to which it belongs,'" M.R.E. 702 cmt. (quoting Frye v. U.S., 293 F. 1013, 1014 (1923)).
¶ 15. There is no invalidity to an expert witness's testimony even if the answer is in effect also a legal conclusion, if what underlies that conclusion is within the witness's specialized area of expertise. Another evidentiary rule provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R.E. 704. The comment to the rule states that an "opinion is no longer objectionable solely on grounds that it `invades the province of the jury.'" M.R.E. 704 cmt.
¶ 16. None of this means that a witness may properly be asked to tell the jury what result to reach. Hart v. State, 637 So.2d 1329, 1339 (Miss.1994). Quite obviously, the line between proper and improper questions is not always a self-evident one.
¶ 17. The issue here was whether the victim's injuries were "serious." Whether the medical definition of seriousness is the same as the legal one was not explored. We explain the legal definition under the next issue. The doctor stated that these injuries were in his view serious.
¶ 18. Regardless of the validity of Dr. Henderson's testimony, the emergency room physician who treated S.J., had already testified. Dr. Blanchard was asked "could you please tell us in your professional opinion, please, sir, whether or not the injuries you observed about [S.J.], would you classify those as serious injuries?" Dr. Blanchard responded that they were. McBeath's attorney failed to object to this testimony. As a result, the testimony of the dentist, Dr. Henderson, was merely cumulative and resulted in no harm to McBeath.
*455 ¶ 19. The definition of "serious bodily injury" includes forecasts of the permanence of disfigurement and an analysis of whether the injury created a risk of death. Properly explained, a question regarding whether an expert believed such circumstances existed as to a victim would be within the province of expert opinion. Because legal conclusions are not per se prohibited, it would not even be objectionable for "serious bodily injury" to be the label that the expert put upon the injuries once the witness had the meaning of the term explained. Indeed, whether in a physician's expert opinion any disfigurement was temporary or a blow did or did not threaten the victim with death, would have been helpful to the jury.

C. Basis of expert opinion
¶ 20. Finally, we consider whether there was any bases for Dr. Henderson's opinion that S.J.'s injuries were serious. Felonious child abuse is the intentional burning, torturing, or abuse of a child so as to cause serious bodily harm, unless done in self-defense or defense of another. Miss.Code Ann. § 97-5-39(2) (Rev.1994). The supreme court has used the Model Penal Code definition for "serious bodily injury," which is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Fleming v. State, 604 So.2d 280, 292 (Miss. 1992) (quoting Model Penal Code § 210.0 (1980)). This definition has been employed in felony child abuse cases. Yates v. State, 685 So.2d 715, 720 (Miss.1996).
¶ 21. S.J. sustained the loss of three teeth and one tooth was cracked, requiring a root canal. There is no Mississippi case law on whether the loss of a tooth is considered a serious bodily injury under the Model Penal Code definition adopted by the court. Several courts have considered the issue and have held that loss of a tooth is a serious bodily injury. Lenzy v. State, 689 S.W.2d 305, 310 (Tex.Ct.App. 1985) (common usage as well as the legal definition of the word "member" includes teeth, as they are separate, definable parts of the body); State v. Bridgeforth, 357 N.W.2d 393, 394 (Minn.Ct.App.1984) ("loss of a tooth is a permanent loss of the function of a bodily member"); State v. Bogenreif, 465 N.W.2d 777, 781 (S.D.1991) ("loss of teeth, coupled with a cut lip which resulted in a permanent scar is sufficient to sustain a jury's finding of serious bodily injury").
¶ 22. Whether the injuries were serious was a question for the jury. They were properly instructed as to the definition of "serious bodily injury." We find no error in the verdict reached.
¶ 23. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF ONE COUNT OF FELONIOUS CHILD ABUSE AND SENTENCE TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LEAKE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.