962 So.2d 68 (2007)
John POYNOR, Sr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01919-COA.
Court of Appeals of Mississippi.
May 1, 2007.
*70 Alison Oliver Kelly, Robert L. Williams, Elizabeth Paige Williams, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
ISHEE, J., for the Court.
¶ 1. The motion for rehearing is denied, and the original opinion in this appeal is withdrawn, and this opinion is substituted in lieu thereof. Poynor was sentenced to serve ten years, with five years suspended, for statutory rape, and five years for child fondling, with both sentences to be served consecutively, all in the custody of the Mississippi Department of Corrections (MDOC). John Poynor, Sr. was convicted in the Circuit Court of Panola County of statutory rape and child fondling. Poynor was sentenced to serve ten years, with five years suspended, for statutory rape, and five years for child fondling, with that five year sentence suspended and to be served consecutively to the five year suspended sentence for the statutory rape conviction, all in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved by the judgment against him, Poynor appeals. He asserts the following issues for this Court's review:
I. Whether the indictment was fatally flawed as a matter of law.
II. Whether the court erred in allowing the testimony of the State's expert witness because she was not qualified and her opinions as to the general characteristics of other child sexual abuse victims were improper.
III. Whether the court erred in limiting and restricting Poynor from showing that the mother of the alleged victims, as well as the alleged victims, were prejudiced or biased toward Poynor and further erred in refusing to allow Poynor to call other witnesses to demonstrate such bias or prejudice.
IV. Whether the jury was inadequately instructed as to the law of the case.
V. Whether Poynor's trial counsel was constitutionally ineffective.
VI. Whether the cumulative effect of all the errors requires reversal.
Finding no error, we affirm.

FACTS
¶ 2. On April 18, 2005, Poynor was indicted by a Panola County grand jury for count one, statutory rape of A.M., count two statutory rape of C.S., and count *71 three, child fondling of T.S.[1] At the time of the trial, Poynor was sixty years old. The mother of the three female child victims (Mother) was Poynor's tenant. She also dated Poynor during the time that the alleged offenses were committed.
¶ 3. Count one of the indictment stated that, from July of 2001 through December of 2004, Poynor:
did wilfully, unlawfully and feloniously, have sexual intercourse with A.M., a child with a birth date of March 11, 1990, who was under the age of fourteen (14) years until March 11, 2004. [Poynor] was over the age of seventeen (17) years. [Poynor] was twenty-four (24) or more months older than A.M.A.M. was not [Poynor's] spouse, in direct violation of Section 97-3-65(1)(a), Mississippi Code 1972 Annotated.
Count three of the indictment stated that, during the fall of 2004, Poynor:
did wilfully, unlawfully and feloniously, touch or rub T.S., a child whose birth date of December 22, 1992, with his hands. [Poynor] was above the age of eighteen (18) years. T.S. was under the age of sixteen (16) years. [Poynor] did touch or rub T.S. for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, in direct violation of Section 97-5-23(1), Mississippi Code 1972 Annotated.
¶ 4. On July 11, 2005, Poynor filed a notice of intent to introduce evidence of prior sexual activity of the purported victims, and on July 26, 2005, Poynor filed an amended motion to offer evidence of past sexual behavior with persons other than the accused. In the amended motion, Poynor requested that he be allowed to introduce evidence that two teenage boys, J.E. and C.D., had sexual intercourse with one of the victims. Poynor asserted that this evidence was admissible pursuant to Rule 412 of the Mississippi Rules of Evidence and Mississippi Code Annotated section 97-3-68 (Rev.2006). During a hearing on Poynor's motion, the trial court ruled that Poynor's attorney had done "about all a defense lawyer can do to come up and tell the State, well you have an injury and we are going to show you that we have witnesses that can show there is another source of the injury and then it becomes a jury question." Thus, the trial court determined that Poynor complied with Rule 412 of the Mississippi Rules of Evidence and ruled that he could introduce evidence of past sexual behavior with persons other than the accused.[2]
¶ 5. On August 18, 2005, Poynor's trial began. During voir dire, the trial court ruled that each side would be allowed six, rather than twelve, peremptory challenges for cause because the statute under which Poynor was indicted did not carry a possible life sentence. In making this ruling, the trial court made clear that Poynor was charged under Mississippi Code Annotated section 97-3-65(1)(a), rather than (1)(b), as a conviction under (1)(a) carried a maximum sentence of thirty years, while a conviction under (1)(b) carried a maximum sentence of life imprisonment.
¶ 6. A.M., who was fifteen years old at the time of the trial, testified that when she helped Poynor in his radiator shop, he used to "feel on" her. She further testified *72 that Poynor "put his penis in [her] vagina" on numerous occasions, beginning when she was eleven years old and ending in December of 2004. According to A.M., Poynor gave her money and told her not to tell anyone about the incidents. A.M. testified that the sexual assaults ceased when she went to visit her dad in Illinois in December of 2004. The first person A.M. told about the sexual assault was her mother, who then took her to see a social worker with the Department of Human Services, as well as Dr. Tanya King.
¶ 7. T.S. was in the sixth grade at the time of the trial. She testified that Poynor touched her on her "private spot" between her legs when they were riding a four-wheeler together. T.S. further testified that Poynor put his hands between her shorts and her underwear on more than one occasion. T.S. explained that she did not tell her mother what had happened because she was scared that she would "get in trouble."
¶ 8. Dr. Tanya King testified as a medical expert for the State. Dr. King graduated from the University of Mississippi Medical Center with a specialty in pediatrics. She testified that she was board certified in pediatrics, that she was a member of the Lafayette County Child Abuse Task Force, and that she had been trained in the field of child sex abuse. Dr. King was qualified by the trial court as an expert witness without an objection from defense counsel.
¶ 9. Dr. King examined A.M.'s vagina with a culposcope, which enabled her to magnify A.M.'s genitalia and film the examination. Dr. King testified that her examination revealed that A.M. had a "thin hymenal ring with deep notches." She further testified that the notches were consistent with the history that A.M. had been vaginally penetrated more than forty times.
¶ 10. At the conclusion of the State's case-in-chief, Poynor moved for a directed verdict. The trial court found that a jury question had been made as to counts one and three, but found insufficient evidence to submit count two of the indictment to the jury. Consequently, the trial court dismissed count two regarding the statutory rape of C.S.
¶ 11. The first witness to testify for the defense was C.D., a teenager who was three years older than A.M.C.D. testified that he had sexual intercourse with A.M. on two occasions. J.E., who was seventeen at the time of the trial, also testified that he had sexual intercourse with A.M.J.E. further testified that he had sexual intercourse with A.M. only once, but that he could not remember the year or the month when it happened.
¶ 12. Poynor testified that he met the Mother in 1999, and that he had lived with her and engaged in a sexual relationship with her "off and on" for the past four or five years. He further testified that he never had sexual intercourse with A.M. Regarding the charge of child fondling, Poynor testified that, one day when he and T.S. were riding a four-wheeler, he grabbed her pants' leg because the four-wheeler was about to turn over. He further testified that he did not grab T.S. to fulfill any sexual desires.
¶ 13. The State called A.M. and T.S. as rebuttal witnesses. A.M. testified that she never had sexual intercourse with C.D. or J.E.A.M. further testified that she had sexual intercourse with Poynor on more than twenty occasions. T.S. testified that the four-wheeler did not almost turn over when Poynor touched her.
¶ 14. On August 18, 2005, the jury found Poynor guilty of count one, statutory rape, and count three, child fondling. Poynor's amended motion for JNOV or, in the alternative, a new trial, was denied.

*73 ISSUES AND ANALYSIS
I. Whether the indictment was fatally flawed as a matter of law.
¶ 15. Poynor asserts that the indictment was fatally flawed because it cited Mississippi Code Annotated section 97-3-65(1)(a), but used the language of Mississippi Code Annotated section 97-3-65(1)(b).[3] Consequently, Poynor asserts that count one charged Poynor with the statutory rape of A.M. while A.M. was both under the age of fourteen and over the age of fourteen. The State asserts that Poynor has waived this issue because he failed to raise this issue in the court below. We agree.
¶ 16. Poynor failed to object to the indictment during the voir dire discussion regarding peremptory challenges for cause. Poynor also did not raise this issue in his motion for JNOV. "It is well stated that failure to make a contemporaneous objection waives that issue for the purposes of an appeal." Robertson v. State, 921 So.2d 348, 351(¶ 7) (Miss.Ct.App.2005) (citing Smith v. State, 729 So.2d 1191, 1210(¶ 87) (Miss.1998)). Therefore, we find that this issue has been waived.
¶ 17. We must also note that the issue of whether an indictment is so flawed as to warrant reversal is a question of law and allows this Court a broad standard of review. Steen v. State, 873 So.2d 155, 161(¶ 21) (Miss.Ct.App.2004) (citing Peterson v. State, 671 So.2d 647, 652 (Miss. 1996)). The primary purpose of an indictment is to notify a defendant of the charges against him so as to allow him to prepare an adequate defense. See Lewis v. State, 897 So.2d 994, 996(¶ 9) (Miss.Ct. App.2004). All that is required is that the indictment provide "a concise and clear statement of the elements of the crimes charged." Williams v. State, 445 So.2d 798, 804 (Miss.1984).
¶ 18. Pursuant to Mississippi Code Annotated section 97-3-65(1)(a) (Supp. 2005), the crime of statutory rape is also committed when:
(a) Any person seventeen (17) years of age or older has sexual intercourse with a child who:
(I) Is at least fourteen (14) but under (16) years of age;
(ii) Is thirty-six (36) or more months younger than the person; and
(iii) Is not the person's spouse.
Regarding count one, the indictment stated that from July of 2001 through December of 2004, Poynor:
did wilfully, unlawfully and feloniously, have sexual intercourse with A.M., a child with a birth date of March 11, 1990, who was under the age of fourteen (14) years until March 11, 2004. [Poynor] was over the age of seventeen (17) years. [Poynor] was twenty-four (24) or more months older than A.M.A.M. was not [Poynor's] spouse, in direct violation of Section 97-3-65(1)(a), Mississippi Code 1972 Annotated.
Thus, even though the issue was not raised in the court below, we also find that the indictment was not so flawed as to warrant reversal. The indictment clearly stated that Poynor was being charged with statutory rape "in direct violation of Section 97-3-65(1)(a), Mississippi Code 1972 Annotated." The indictment also clearly stated *74 that Poynor had sexual intercourse with A.M. through December of 2004, which was after her fourteenth birthday. Therefore, this issue is without merit.
II. Whether the court erred in allowing the testimony of the State's expert witness because she was not qualified and her opinions as to the general characteristics of other child sexual abuse victims were improper.
¶ 19. Whether to admit expert testimony is a decision left to the sound discretion of the trial court. Marbra v. State, 904 So.2d 1169, 1176(¶ 27) (Miss.Ct. App.2004) (citing Puckett v. State, 737 So.2d 322, 342(¶ 57) (Miss.1999)). We will not reverse based on the trial court's admission of expert testimony, unless we conclude that the admission was arbitrary and clearly erroneous, i.e., that the trial court abused its discretion. Id. Regarding expert testimony, Rule 702 of the Mississippi Rules of Evidence provides that:
[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 20. Poynor asserts that Dr. King's testimony was inadmissible because she was not properly qualified as an expert witness and because her testimony regarding the general characteristics of other child sexual abuse victims was improper. In addressing this issue, we first note that, during trial, Poynor objected to portions of Dr. King's testimony, but did not object to Dr. King being qualified as a medical expert. An objection to a witness's testimony does not constitute an objection to the witness's credentials. McBeath v. State, 739 So.2d 451, 454(¶ 10) (Miss.Ct.App. 1999). The Mississippi Supreme Court has refused to hold that an expert was not properly qualified when the opposing party did not object to the witness's credentials but only to the testimony. Id. (citing Baine v. State, 604 So.2d 249, 255 (Miss. 1992)). Because Poynor failed to object to Dr. King's qualification as an expert, we find that Poynor is procedurally barred from raising this issue on appeal.
¶ 21. Regarding the content of Dr. King's testimony, Poynor asserts that Dr. King made improper generalizations about child abuse victims, contrary to the Mississippi Supreme Court's ruling in Hosford v. State, 560 So.2d 163, 168 (Miss. 1990). The generalization to which Poynor refers is Dr. King's testimony that A.M. was different than ninety-eight percent of other child abuse victims because there were physical findings. Poynor also challenges the admissibility of Dr. King's opinion that the "notch" shown by the examination with the culposcope could be a sign of penal vaginal penetration.
¶ 22. In Hosford, the court found that expert testimony about commonly shared characteristics and traits of sexually abused children, or child sexual abuse profiles, was improper under Rule 702 of the Mississippi Rules of Evidence. Id. at 166. The Hosford court reasoned that, until a child sexual abuse profile had been scientifically established, "courts should be reluctant to allow expert testimony that a child displays the so-called typical characteristics of other victims." Id. at 168.
¶ 23. We find that the expert testimony in Hosford is readily distinguishable from that in the case at bar. The testimony of *75 the expert witness in Hosford primarily involved a description of child abuse profiles. Id. Furthermore, the expert in Hosford concluded that the victim in that case had been sexually abused, as she exhibited the characteristics and traits of sexually abused children. Id. In the case at bar, Dr. King's only testimony regarding traits of sexually abused children did not address similarities A.M. shared with those victims, but noted that A.M. differed from ninety-eight percent of those victims. Furthermore, Dr. King's testimony focused on the results of her physical examination of A.M., rather than child sexual abuse profiles. Dr. King testified that A.M. had "multiple notches" on her hymenal ring and that this was "consistent with her being vaginally penetrated" more than forty times. Moreover, on cross-examination, Dr. King gave the following testimony:
[Defense counsel]: Now, can anything other than a penis cause these hymenal ring abnormalities?
[Dr. King]: Yes.
[Defense counsel]: And what would those things be?
[Dr. King]: Could be anything, sir.
[Defense counsel]: All right. Could be sex toys, couldn't it?
[Dr. King]: Could be.
¶ 24. We are not persuaded by Poynor's argument that Dr. King made improper generalizations about child abuse victims. In Hobgood v. State, 926 So.2d 847, 855(¶ 27) (Miss.2006), the court held that "experts may not testify as to a syndrome commonly associated with children who have been sexually abused, but can testify as to common characteristics of sexually abused children." Consequently, we find that the trial court did not abuse its discretion in allowing Dr. King's testimony. This issue is without merit.
III. Whether the court erred in limiting and restricting Poynor from showing that the mother of the alleged victims, as well as the alleged victims, were prejudiced or biased toward Poynor and further erred in refusing to allow Poynor to call other witnesses to demonstrate such bias or prejudice.
¶ 25. A trial judge has great discretion in determining the relevancy and admissibility of evidence. Fisher v. State, 690 So.2d 268, 274 (Miss.1996) (citing Shearer v. State, 423 So.2d 824, 826 (Miss.1982)). The trial judge's ruling on such matters will not be reversed, unless the judge abused this discretion so as to be prejudicial to the accused. Id. Rule 103(a) of the Mississippi Rules of Evidence states in part that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."
¶ 26. Poynor asserts that the court erred in not allowing him to demonstrate the bias or prejudice of witnesses in this case. We disagree. The record shows that Poynor testified that the reason he was being accused of sexually abusing A.M. and T.S. was "all about money." He further testified that the Mother admitted that the motive was money. During cross-examination of the Mother by Poynor's attorney, the following exchange took place:
[Defense counsel]: Have you told anybody around town that you are going to take [Poynor] for all he's worth?
[The Mother]: No.
[Defense Counsel]: You haven't? Have you made any plans to file a civil lawsuit against him?
[The Mother]: Yes.

*76 [Defense Counsel]: And you have talked to an attorney about that, haven't you?
[The Mother]: I've talked to two.
[The State]: Object to relevancy, Your Honor.
[Defense Counsel]: Motive.
[The State]: But she doesn't have any motive.
BY THE COURT: I sustain the objection. It would not be relevant as to the children in the criminal charge.
¶ 27. We are not persuaded that the trial court abused its discretion in determining that the Mother's motive was a collateral matter that would not help the jury decide whether the statutory rape or fondling occurred. Therefore, this issue is without merit.
IV. Whether the jury was inadequately instructed as to the law of the case.
¶ 28. "In determining whether error lies in the manner in which the jury was instructed, the various requested instructions are not considered in isolation. Rather, the instructions actually given must be read as a whole." Sheffield v. State, 844 So.2d 519, 524(¶ 12) (Miss.Ct. App.2003) (citing Turner v. State, 721 So.2d 642, 648(¶ 21) (Miss.1998)). No reversible error will be found if the instructions fairly announce the law of the case and create no injustice. Id.(citing Coleman v. State, 697 So.2d 777, 782 (Miss. 1997)). Although a defendant is entitled to jury instructions which present his theory of the case, "this entitlement is limited to instructions that correctly state the law, are not covered fairly elsewhere in the instructions, and have a foundation in the evidence." Sproles v. State, 815 So.2d 451, 454(¶ 9) (Miss.Ct.App.2002) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). Furthermore, "[I]t is also well established that instructions to the jury should not single out or contain comments on specific evidence." Crimm v. State, 888 So.2d 1178, 1186(¶ 35) (Miss.Ct.App.2004) (quoting Lester v. State, 744 So.2d 757, 759(¶ 6) (Miss.1999)).
¶ 29. Poynor asserts that the trial court erred in giving jury instructions S-1 and C-13, and in refusing to grant jury instruction D-6. In jury instruction S-1, the court instructed the jury to find Poynor guilty of statutory rape under count one if the State has proven each of the following elements beyond a reasonable doubt: (1) beginning in July 2001 and continuing until December 2004, Poynor did engage in sexual intercourse with A.M.; (2) A.M. was a child under the age of fourteen years; (3) A.M. is twenty-four months younger than Poynor; and (4) A.M. is not the spouse of Poynor. Jury instruction C-13 read as follows: "[t]he issue of chastity or lack of on the part of [A.M.] shall not be considered by the jury in reaching your verdict in count [one] of this trial." Requested jury instruction D-6 read as follows: "[t]he jury is instructed that the absence of, or injury to, a hymenal ring of a purported victim shall not, in and of itself, lead to a finding that the hymenal ring was injured or absent due to sexual contact."
¶ 30. Regarding jury instruction C-13, Poynor concedes that it is a correct statement of the law. Nonetheless, he asserts that it is an incomplete statement of the law, as "Rule 412 of the Rules of Evidence permits evidence of sexual intercourse with others, other than the defendant as to the source of the injury." Poynor further asserts that the exclusion of jury instruction D-6 left the jury "to wonder why the testimony of [C.D. and J.E.] was offered in the first place." Thus, Poynor maintains that the court failed to "restrict the evidence to its proper scope and instruct the jury accordingly," as required by Rule 105 of the Mississippi Rules of Evidence.
*77 ¶ 31. The record reflects that the court refused to grant jury instruction D-6 because it was not supported by the evidence and was not necessary for Poynor to present his theory of defense that there was an alternate source of injury to the hymenal ring. We agree. Poynor made his theory of defense clear to the jury through the testimony of C.D. and J.E., who both testified that they had sexual intercourse with A.M. Poynor further suggested an alternate source of injury through Dr. King's testimony that injury to a hymenal ring can, hypothetically, be caused by objects other than a penis. During closing arguments, Poynor also argued that Dr. King's testimony regarding other sources of injury to the hymenal ring created reasonable doubt. Dr. King's hypothetical statement did not, however, constitute proof that A.M.'s hymenal ring was injured as a result of sexual contact.
Consequently, we find that the trial court did not err in refusing to grant jury instruction D-6.
¶ 32. Regarding jury instruction S-1, Poynor asserts that the court ruled that the jury could not even consider acts occurring before A.M.'s fourteenth birthday. The record reveals no such ruling by the trial court. Furthermore, as previously stated, the indictment, as well as jury instruction S-1, clearly address whether Poynor had sexual intercourse with A.M. through December of 2004, which was after her fourteenth birthday. This issue is without merit.
V. Whether Poynor's trial counsel was constitutionally ineffective.
¶ 33. Poynor asserts that his trial counsel was ineffective because he should have considered requesting the following: (1) severance of the charges, (2) a M.R.E. 803(25) hearing outside the presence of the jury to determined the admissibility of hearsay testimony given by the social worker from the Department of Human Services who interviewed A.M. and T.S., and (3) a jury instruction that the proof in count two was insufficient to prove the crime charged in count two. Poynor also asserts that his trial counsel should have objected to improper comments made by the State in closing, and to jury instruction S-1.
¶ 34. The standard of review for a claim of ineffective assistance of counsel was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To bring a successful claim for ineffective assistance of counsel, pursuant to the court's ruling in Strickland, the defendant must prove that his attorney's overall performance was deficient and that this deficiency deprived him of a fair trial. Id. at 689, 104 S.Ct. 2052; Moore v. State, 676 So.2d 244, 246 (Miss.1996) (citing Perkins v. State, 487 So.2d 791, 793 (Miss.1986)). We must be mindful of the "strong rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." Covington v. State, 909 So.2d 160, 162(¶ 4) (Miss.Ct.App.2005) (quoting Stevenson v. State, 798 So.2d 599, 602(¶ 6) (Miss.Ct.App. 2001)). To overcome this presumption, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Woodson v. State, 845 So.2d 740, 742(¶ 9) (Miss.Ct.App.2003). This Court considers the totality of the circumstances when addressing a claim of ineffective assistance of counsel. Colenburg v. State, 735 So.2d 1099, 1103(¶ 9) (Miss.Ct.App.1999) (citing Carney v. State, 525 So.2d 776, 780 (Miss. 1988)).
*78 ¶ 35. The record reflects that Poynor's trial counsel filed numerous pre-trial motions, including his successful motion to offer evidence of past sexual behavior, and that trial counsel presented numerous witnesses in Poynor's defense. The record further reflects that Poynor's trial counsel succeeded in having count two of the indictment dismissed. In his brief to this court, Poynor merely asserts that trial counsel should have considered making certain requests or objections; he does not demonstrate how he was prejudiced by his counsel's alleged errors. Consequently, we find that Poynor has not overcome the presumption that his attorney's performance fell within a wide range of reasonably professional assistance and that the decisions made by his attorney were strategic. This issue is without merit.
VI. Whether the cumulative effect of all the errors requires reversal.
¶ 36. Because we determine that Poynor has failed to demonstrate any error whatsoever, we find that this issue is without merit.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF COUNT ONE, STATUTORY RAPE, AND SENTENCE OF TEN YEARS, WITH FIVE YEARS SUSPENDED, AND COUNT THREE, CHILD FONDLING, AND SENTENCE OF FIVE YEARS SUSPENDED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH COUNTS ONE AND THREE TO RUN CONSECUTIVELY TO EACH OTHER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] Initials are used to protect the identity of the minor children.
[2] Rule 412(b)(2)(A) provides in part that evidence of a victim's past sexual behavior is admissible if it is evidence of:

[p]ast sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury.
[3] Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2006) provides that the crime of statutory rape is committed when:

(b) A person of any age has sexual intercourse with a child who:
(I) Is under the age of fourteen (14) years;
(ii) Is twenty-four (24) or more months younger than the person; and
(iii) Is not the person's spouse.