LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. A jury in the Lowndes County Circuit Court convicted Scott Daniel Baker of felony child abuse. Baker was sentenced to ten years in the custody of the Mississippi Department of Corrections with five years’ post-release supervision and ordered to pay a $1,000 fine. Baker filed post-trial motions, which were subsequently denied.
 

 ¶ 2. Baker now appeals, asserting the following issues: (1) the trial court erred in allowing letters written by Baker into evidence; (2) the trial court erred in failing to allow evidence of his mental state at the time the letters were written; (3) the trial court erred in allowing evidence of a prior felony conviction; (4) the evidence was insufficient to support the guilty verdict; and (5) the guilty verdict is against the overwhelming weight of the evidence.
 

 FACTS
 

 ¶ 3. Baker was married to Leigh Baker and lived with her and her two daughters in a mobile home in Columbus, Mississippi. Leigh was pregnant with Baker’s child. On the morning of May 19, 2005, Leigh went into her four-year-old daughter’s room and noticed that Katie’s
 
 [1]
 
 face was bloody and swelling. Katie told Leigh that Maureen, Leigh’s other daughter who was eighteen-months-old at the time, had struck her with a Leap Pad toy. Leigh then took Katie to see the doctor.
 

 ¶ 4. Dr. Pam Sykes testified that Katie presented with significant swelling and bruising of her face and forehead and a laceration on her right cheek. Dr. Sykes had seen Katie the day before and testified that Katie did not have any facial trauma at that time. Dr. Sykes asked Katie what had happened, and Katie responded that Baker had hit her with a Leap Pad toy. Dr. Sykes stated that only multiple blows using great force could have caused the extent of Katie’s injuries. Dr. Sykes did not think it would have been possible for Maureen or Katie herself to have caused these injuries.
 

 ¶ 5. Katie testified that Baker came into her room during the night and punched her several times in the head. Katie stated that she stayed in bed because she was afraid Baker would come back and hit her again.
 

 ¶ 6. Rachel and Alex Lawrence also lived in the mobile home. Rachel and Alex were staying in the bedroom next to Katie and Maureen. Rachel and Alex each testified that they did not hear anyone go into the girls’ room that night.
 

 DISCUSSION
 

 I. BAKER’S LETTERS
 

 ¶ 7. In his first issue on appeal, Baker argues that several letters written by him to Leigh should not have been allowed into evidence. Baker contends that the letters were written while he was in jail approximately a year prior to May 19, 2005. The pertinent parts of these letters contained numerous statements that Baker, upon his return from the penitentiary, would discipline the children if they misbehaved or wet the bed. Baker
 
 *238
 
 used several phrases, such as “she will get to know my paddle,” “whip her good,” “whip that ass with a belt,” and “whip her ass hard everyday of the year.” These letters contained vulgar and inflammatory language. After a hearing on the matter, the trial court allowed the letters to be introduced into evidence with information unrelated to the charges redacted. The trial court allowed the letters to be introduced pursuant to Rule 403 and Rule 404(b) of the Mississippi Rules of Evidence. The letters were used during the State’s cross-examination of Leigh and Baker.
 

 ¶ 8. Rule 404(b) allows evidence of “other crimes, wrongs, or acts” to show proof of “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” This evidence must also pass the test in Rule 403, whether the probative value of the evidence is “substantially outweighed by the danger of unfair prejudice.” The trial court determined that the letters were admissible under 404(b) to show intent or absence of mistake or accident and that the letters were more probative than prejudicial.
 

 ¶ 9. Baker contends that the letters were written a year prior to the incident; thus, the letters were too remote in time to be relevant. We first note that we are not convinced that the letters constitute “other crimes, wrongs, or acts” under 404(b). Regardless, in a similar situation, the Mississippi Supreme Court stated that “even if the letters do not fall under Rule 404(b), our analysis is still essentially the same, since the letters could still be relevant under Rules 401 and 402 to show intent or motive.”
 
 De La Beckwith v. State,
 
 707 So.2d 547, 579 (¶ 127) (Miss.1997);
 
 see also Kolb v. State,
 
 542 So.2d 265, 269 (Miss.1989) (letters written by defendant from prison after arrest subjected to analysis under Rules 401 and 402);
 
 May v. State,
 
 524 So.2d 957, 965 (Miss.1988) (threats to deceased would still be relevant under Rules 401 and 402). Rule 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 402 simply states that “all relevant evidence is admissible,” subject to certain exceptions.
 

 ¶ 10. No matter the avenue used to determine relevance, the evidence is still subjected to the Rule 403 test. In
 
 De La Beckwith,
 
 the supreme court, although failing to state with certainty whether the letters written by Byron De La Beckwith constituted “other crimes, wrongs, or acts,” ultimately determined that admitting the letters was more probative than prejudicial under Rule 403.
 
 De La Beckwith,
 
 707 So.2d at 580 (¶ 130). In
 
 May,
 
 the supreme court noted that the question of remoteness in regard to a threat made ten months prior to a murder became a question of relevancy under Rule 401, and as a result, “[t]he Court would thus again be faced with the question of whether the trial [court] abused [its] discretion in admitting the testimony under Rule 403.”
 
 May,
 
 524 So.2d at 965.
 

 ¶ 11. These letters written by Baker were relevant under Rule 401, and it was within the jury’s province to determine what weight to give them.
 
 De La Beck-with,
 
 707 So.2d at 580 (¶ 128). Baker’s views on disciplining his children, however inflammatory or inarticulately put, offered an explanation for his actions. Furthermore, there was testimony that Baker had a violent temper and had difficulty exercising patience. We cannot find that the trial court abused its discretion in finding the letters were more probative than prejudicial. This issue is without merit.
 

 
 *239
 
 II. EVIDENCE OF BAKER’S MENTAL STATE
 

 ¶ 12. In his second issue on appeal, Baker argues that the trial court erred by not allowing him to introduce evidence through witness testimony of his mental state at the time the letters were written. The trial court determined that since these witnesses were not with Baker when he wrote these letters, they could not testify as to his mental state at that time. The trial court was concerned that pursuant to Rule 403, this testimony would create “confusion of the issues” in the minds of the jury.
 

 ¶ 13. We cannot find an abuse of discretion by the trial court in refusing to allow this particular testimony. None of the witnesses offered had personal knowledge of Baker’s state of mind at the time he wrote the letters. This issue is without merit.
 

 III. PRIOR FELONY CONVICTION
 

 ¶ 14. In his third issue on appeal, Baker argues that the trial court erred in admitting evidence of his prior felony conviction. At the close of its case, the State requested a hearing on the admissibility of Baker’s prior felony conviction under Rule 609(a)(1) of the Mississippi Rules of Evidence. The State wanted to use Baker’s accessory-after-the-fact conviction for impeachment purposes. The trial court conducted a hearing, pursuant to
 
 Peterson v. State,
 
 518 So.2d 632, 636 (Miss.1987), and found the prior conviction to be admissible for impeachment purposes. The trial court did order a limiting instruction be given to the jury concerning this prior conviction.
 

 ¶ 15. According to
 
 Peterson,
 
 a trial court should consider the following factors when ruling on the admissibility of prior convictions under Rule 609(a)(1): “(1) [t]he impeachment value of the prior crime; (2)[t]he point in time of the conviction and the witnesses] subsequent history; (3)[t]he similarity between the past crime and the charged crime; (4)[t]he importance of the defendant’s testimony; [and] (5)[t]he centrality of the credibility issue.”
 
 Id.
 
 Furthermore, this Court applies the familiar abuse-of-discretion standard when reviewing a trial court’s decision to admit a prior conviction for impeachment purposes.
 
 Strickland v. State,
 
 980 So.2d 908, 919 (¶ 18) (Miss.2008). The trial court made an on-the-record determination of the
 
 Peterson
 
 factors and found the prior conviction admissible for impeachment purposes.
 

 ¶ 16. In addition to the
 
 Peterson
 
 factors, the trial court also addressed Rule 403 to determine whether the admission of the prior conviction was more probative than prejudicial. The trial court ruled that the prior conviction would be admissible under Rule 403, finding that the prior conviction was not similar to the crime charged and a limiting instruction would be given to the jury. The trial court also noted that the jury would only be informed of the accessory-after-the-fact conviction and not the underlying crime of assault.
 

 ¶ 17. The trial court made a comprehensive review of the
 
 Peterson
 
 factors as well as Rule 403, and we can find no abuse of discretion in its ruling. This issue is without merit.
 

 IV.INSUFFICIENT EVIDENCE
 

 ¶ 18. In his fourth issue on appeal, Baker argues that the evidence was legally insufficient to support the verdict. Specifically, Baker contends that the State failed to prove that Katie had suffered a serious bodily injury. Our standard of review in regard to challenges to the sufficiency of the evidence is well settled. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt
 
 *240
 
 that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction.
 
 Id.
 
 However, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence.
 
 Davis v. State,
 
 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
 

 ¶ 19. Pursuant to Mississippi Code Annotated section 97-5-39(2)(a) (Rev.2006), “any person who shall intentionally ... whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse of a child.... ” Dr. Sykes testified that although Katie had no permanent injuries and did not suffer any fractures, the wounds she received were serious. Dr. Sykes noted significant bruising and swelling of Katie’s face as well as a laceration on her cheek. Dr. Sykes further testified that only multiple blows using great force could have caused Katie’s injuries.
 

 ¶ 20. The jury was instructed as to the definition of “serious bodily harm,” and it was its responsibility to determine whether Katie’s injuries were serious.
 
 McBeath v. State,
 
 739 So.2d 451, 455 (¶ 22) (Miss.Ct. App.1999). We find that there was sufficient evidence for the jury to find that Baker had inflicted serious bodily harm to Katie. This issue is without merit.
 

 V. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 21. In his final issue on appeal, Baker argues that the jury verdict is against the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18). When reviewing the weight of the evidence, this Court sits as a “thirteenth juror.”
 
 Id.
 

 ¶ 22. Baker contends that the testimony of an eight-year-old child, who was four years old at the time of the incident, was unreliable and at odds with other testimony. However, Katie testified that she clearly saw Baker in her room that night and saw him strike her several times. Katie also told Dr. Sykes that Baker had hit her. The testimony of the other witnesses does not contradict Katie’s testimony. The other witnesses, namely Leigh and the Lawrences, testified that they would have heard if someone had entered Katie’s room that night and injured her. However, the jury clearly believed Katie’s testimony and resolved any other apparent conflicts in the testimony in the State’s favor. We cannot find that to allow Baker’s conviction to stand would sanction an unconscionable injustice. This issue is without merit.
 

 ¶ 23. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS’ POST-RELEASE SUPERVISION AND TO PAY A $1,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS AND MAXWELL, JJ., CONCUR IN
 
 *241
 
 PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The Court of Appeals declines to identify victims of child abuse. In the interest of the child's privacy, the minor’s name, as well as the names of family members, have been substituted with aliases.